EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
PABLO PORTALATÍN, acusado y apelante.

Núm. 14905.—*Sometido:* Febrero 1, 1951.—*Resuelto:* Febrero 12, 1951.

*Luis A. Archilla Laugier* y *José E. Bosch Roqué,* abogados del apelante; *Hon. Procurador General Víctor Gutiérrez Franqui (Vicente Géigel Polanco, Ex Procurador General,* en el alegato), *J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Frank. Vizcarrondo Vivas, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El acusado fué juzgado y convicto por infracción a la sección 10 de la Ley núm. 220, Leyes de Puerto Rico, 1948, bajo una acusación alegando que "ilegal, voluntaria y maliciosamente, era dueño de una banca de Boli-Pool. Que como tal dueño operaba dicha banca y repartía o hacía repartir entre sus agentes para la venta, *tickets,* papeletas, libretas y toda clase de material que se usa o podía usarse en relación con los juegos ilegales conocidos como 'Bolita' y

'Boli-Pool' en combinación con una lotería clandestina, pagando un premio en dinero a la persona poseedora del número que coincidiera con las tres últimas cifras del número de la lotería antes mencionada."

En apelación el primer señalamiento es que el tribunal inferior erró al declarar sin lugar la excepción perentoria. La contención del acusado es que la acusación es ambigua, ininteligible y "dudosa" y que por lo tanto no cumple con los requisitos de los artículos 71 y 82 del Código de Enjuiciamiento Criminal, ed. 1935.(¹) En apoyo de esta contención, el apelante sostiene que la alegación de que es dueño de una "banca de bolita" no informa debidamente al acusado que se le está imputando una infracción a la sección 10 porque en ella o en parte alguna de la citada Ley núm. 220 no se menciona o define lo que es una "banca de bolita".

Encontramos este argumento falaz. En leyes y acusaciones de esta naturaleza la Legislatura y los fiscales de distrito pueden usar los nombres con que corrientemente se conocen dichas actividades en la comunidad sin que sea necesario especificar los distintos detalles que forman las mismas. Por ejemplo, en el artículo 299 del Código Penal la Legislatura no describió las reglas que gobiernan el póker u otros juegos prohibidos cuando prohibió que se jugaran los mismos. Sin embargo, un acusado no podría atacar el artículo 299 por ser ininteligible y ambiguo; tampoco podría alegar que una acusación bajo dicho artículo debería hacer constar en detalle la manera como se juega el póker. En igual forma, una persona que vive en esta comunidad puede razonable--

---

(¹) El artículo 71, inciso 2, dispone que toda acusación deberá contener "Una exposición de los actos constitutivos del delito, en lenguaje conciso y corriente, y redactada de tal modo que cualquier persona de inteligencia común pueda entenderla."

El artículo 82, inciso 7, dispone que la acusación es suficiente si de ella se deduce: "Que la acción u omisión considerada como delito esté expresada con tal grado de claridad, que facilite al tribunal el pronunciar su sentencia como resultado de una convicción y conforme a derecho."

mente presumirse que entiende una acusación en contra suya cuando se le acusa de ser dueña de una "banca de boli-pool". Sabe, lo que el resto del público también sabe, y el público sabe que el boli-pool se juega aquí por medio de "bancas" independientes que reciben dinero del producto de la venta de boletos o números y que paga premios en dinero a las personas tenedoras de dichos números agraciados en los sorteos.

La sección 10 de la Ley núm. 220 es en este respecto similar a la sección 4 de la Ley núm. 25, Leyes de Puerto Rico, 1935, Sesión Extraordinaria, bajo la cual también constituía delito ser dueño de una "banca de bolita". De la misma manera la Ley núm. 25 no contenía definición o mención alguna de la frase "banca de bolita". Sin embargo, acusaciones radicadas bajo las disposiciones de la sección 4 usaron dicha frase sin describir en detalle de qué consistía la banca. Véase *Pueblo* v. *Cardona*, 57 D.P.R. 695. Como hemos dicho en *Pueblo* v. *Mantilla*, 71 D.P.R. 36, 50, "En verdad, el uso de tales términos generales se hace necesario debido a los ingeniosos métodos empleados por los que manipulan la bolita con el fin de encubrir sus actividades." Véanse *Forte* v. *United States*, 83 F.2d 612. (C.A., D.C., 1936); 2 Wharton's *Criminal Law*, ed. 12, sec. 1783, págs. 2085–6.

Bajo este señalamiento el acusado también alega que la acusación no es suficiente para constituir una infracción a la sección 10 de la Ley núm. 220 porque la misma no contiene alegación alguna "que denote posesión o dominio" por parte del apelante de cualquiera de los juegos prohibidos por la Ley núm. 220. La sección 10 dispone que "Todo dueño . . . de los juegos prohibidos por esta Ley será reo de delito felony . . . ". La acusación es suficiente toda vez que la misma imputa una infracción de dicha sección en el lenguaje del estatuto.

No podemos convenir con el apelante en que la acusación es defectuosa por la referencia hecha en la misma a una

"lotería clandestina". Interpretamos las alegaciones de la acusación como que significan que la lotería era operada por el acusado. Es verdad que el arreglo puede ser para que el número premiado sea determinado por algo fuera del control del acusado, como las carreras de caballos o la lotería de Santo Domingo. Pero esto no altera el hecho de que el acusado está en esencia manipulando una lotería clandestina de su pertenencia.

■■ El segundo señalamiento es que el tribunal inferior erró al declarar sin lugar en parte las especificaciones solicitadas. La moción solicitaba que se especificara (a) la fecha de la comisión del delito; (b) en qué consiste la llamada "banca de bolita"; (c) en qué consiste la imputada agencia expresándose el nombre de los supuestos agentes; (d) de qué clase de lotería clandestina era dueño el acusado; (e) qué clase de premios se pagaban por el acusado y en qué forma los pagaba.

La moción fué declarada con lugar en cuanto a las especificaciones (a) y (e). Fué correctamente denegada en cuanto a los apartados (b) y (d) por los mismos fundamentos ya expuestos al discutir el primer error. El acusado no tenía derecho a la información solicitada en el apartado (c) puesto que ésta consistía de evidencia más bien que de materia apropiada para una alegación tal como una especificación de particulares. Es por lo tanto aparente que nuestro *dictum* en *Pueblo* v. *Mantilla*, supra, pág. 51, al efecto de que "Si la acusada hubiera deseado una descripción más específica del material, la pudo haber obtenido solicitando un pliego de particulares," no es aplicable a los hechos de este caso.

■ El tercer error va dirigido contra la negativa a la moción para eliminar de la acusación las palabras "y repartía o hacía repartir". Sostiene el apelante que dichos términos son excluyentes el uno del otro y que procedía la eliminación de uno de ellos. No podemos convenir. No vemos

qué perjuicio surge al obligarse a un acusado a defenderse contra una acusación en la que se le imputa que como dueño de una banca de boli-pool "repartía o hacía repartir" materiales de bolita para la venta. El acusado pudo haber repartido, haber hecho repartir, o ambas cosas. En verdad, admite que la acusación no sería defectuosa si "o" hubiera sido sustituída por "y". Describiendo los supuestos actos del apelante en la alternativa es simplemente un medio de evitar el problema de si una acusación por "repartir" haría al acusado responsable por la actuación de agentes que actuaban bajo sus órdenes al igual que por sus propios actos. No encontramos ningún error perjudicial en la resolución declarando sin lugar la moción para eliminar.

◾ El cuarto señalamiento es que el tribunal inferior cometió error al denegar al apelante juicio por jurado. La sección 10 de la Ley núm. 220 tal como fué originalmente aprobada no proveía específicamente que los juicios en casos bajo la misma serían ante tribunal de derecho exclusivamente. Una disposición a ese efecto fué agregada a la sección 10 por la Ley núm. 264, Leyes de Puerto Rico, 1950. Toda vez que el supuesto delito fué cometido antes de la aprobación de la Ley núm. 264, el apelante sostiene que él tenía opción a juicio por jurado o tribunal de derecho.

La dificultad en cuanto a su contención es que poco tiempo después de la aprobación de la Ley núm. 264 resolvimos que la disposición general en la sección 4 de la Ley núm. 220 para juicio por tribunal de derecho exclusivamente "por infracciones a las disposiciones de esta Ley" dispone juicio por tribunal de derecho para una acusación por infracción a la sección 8 a pesar de no existir tal disposición específica en la propia sección 8. *Rivera* v. *González, Alcaide de Cárcel*, 71 D.P.R. 668. De la misma manera, la disposición general de la sección 4 disponía juicio por tribunal de derecho en casos de infracciones a la sección 10 aun antes de la enmienda hecha a ésta en la Ley núm. 264. En otras

palabras, al enmendar la sección 10 antes de la decisión en el caso de *Rivera*, la Legislatura tuvo por miras hacer patentemente claro que los casos bajo la sección 10 fueran juzgados por tribunal de derecho exclusivamente. De los archivos de la Legislatura surge que éste fué el propósito de la Ley núm. 264. *Actas de la Cámara de Representantes de abril 15, 1950*, págs. 1536-67. Pero el caso de *Rivera* demostró que esto era innecesario y que el juicio por tribunal de derecho debía celebrarse en tales casos aun donde el supuesto delito fuera cometido, como en este caso, antes de la enmienda a la sección 10. El tribunal inferior no erró, por lo tanto, al declarar sin lugar la moción del acusado para juicio por jurado.

El quinto señalamiento es que el tribunal inferior erró "al admitir en evidencia prueba documental no conectada con el acusado y ocupada a una tercera persona 18 días después de la comisión del delito imputado al apelante."

Los documentos en cuestión fueron marcados *Exhibit* I, una libreta cuadriculada, y Exhibit II, dos páginas de dicha libreta con números de tres cifras seguidos por un punto y otra cifra. Alejandro Núñez declaró que desde febrero 1, 1950 él estuvo vendiendo números de boli-pool de la banca del acusado a solicitud de éste; que en febrero 6 el acusado le había entregado el Exhibit I para que lo utilizara para anotar los números de boli-pool vendidos por él para la banca del acusado; y que la lista de números en el Exhibit II eran números de boli-pool y había sido preparada por él. Esta declaración fué suficiente para demostrar que la libreta y las listas eran usadas por Núñez como agente del acusado para anotar números que vendía para la banca de boli-pool de éste.

En la repregunta, Núñez también declaró que su casa había sido allanada en febrero 24; que los Exhibits I y II fueron ocupados en la misma en dicha fecha; y que nada había sido ocupado durante un registro anterior que se hizo

entre febrero 6 y 24. A base de esta declaración el acusado alega que Núñez no pudo estar en posesión del Exhibit I en febrero 6 como declaró o entre febrero 6 y 24 porque éste no fué ocupado durante el allanamiento anterior. No podemos convenir con este argumento. Hay varias maneras por las cuales Núñez pudo haber estado en posesión de la libreta en febrero 6 y aún haber evitado su ocupación durante el primer allanamiento. Por ejemplo, él pudo haberla dejado temporalmente en cualquier otro sitio o pudo haberla escondido con éxito en su casa. No convenimos que la declaración de Núñez en cuanto al primer allanamiento nos requiera eliminar su declaración conectando al acusado con los Exhibits I y II. El quinto error no fué cometido.

El apelante señala como errores la actuación del tribunal inferior: (6) al declarar sin lugar la moción de *nonsuit*; (7) al declarar culpable al apelante sin que existiese suficiente corroboración a la declaración del cómplice, Alejandro Núñez; (8) al declarar culpable al apelante sin prueba suficiente de los hechos alegados; (9) en la apreciación de la prueba. Creemos propio discutir estos errores conjuntamente.

*Alejandro Núñez* declaró que empezando en febrero 1, 1950 él había convenido, a instancias del acusado, vender números de boli-pool de la banca propiedad del último por un 5 por ciento del producto de las ventas; que él entregó al acusado el dinero producido por las ventas; que en febrero 5, 1950 salió premiado el número 013 que estaba apuntado en la lista de ese día; que lo había vendido a un veterano, quien le había jugado 80 centavos y por lo tanto se ganó $400; que al siguiente día el acusado vino a su casa y le entregó $400 para pagarle el premio al veterano; que en febrero 24 su casa fué allanada, ocupándose los Exhibits I y II; y que como el acusado, y no él, era el dueño del negocio vino a declarar como testigo.

*Daniel Ortiz Figueroa* declaró que él tenía negocio de frutas con Núñez; que en la noche de febrero 6 estaba en la casa del último en asuntos de su negocio; que el acusado llegó a la casa; que Núñez dijo al acusado que el veterano que se había ganado el premio había venido a buscar su dinero; que el testigo oyó mencionar el número 013; que el acusado sacó algún dinero de su bolsillo y dijo a Núñez, "Toma para que pagues ese número"; que al mismo tiempo que le entregaba el dinero le dejó una libreta sobre la mesa; que la libreta tenía rayas por el mismo medio y no tenía ningún número escrito.

Lo anteriormente expuesto, conjuntamente con los Exhibits I y II, fué la prueba ofrecida por El Pueblo. El acusado no presentó prueba. Creemos que el resumen que hemos hecho de la prueba es suficiente para demostrar que los errores (6) y (8) no fueron cometidos. En cuanto al (9), el apelante hace un gran esfuerzo para demostrar supuestas discrepancias en las declaraciones de los testigos del Pueblo. Creemos que los autos contienen suficientes explicaciones de estas supuestas discrepancias. Pero aun sin estas explicaciones, era el deber del tribunal inferior determinar la credibilidad de los testigos en cuanto a los elementos esenciales del caso, después de considerar toda la evidencia. Nada encontramos en los autos que justifique resolver que el tribunal inferior cometió manifiesto error en la apreciación de la prueba al creer ésta las declaraciones que hemos resumido.

En cuanto al (7), como Núñez era supuestamente un agente del acusado, era un cómplice y su testimonio necesitaba corroboración. *Pueblo* v. *Portalatín*, 63 D.P.R. 641; artículo 253, Código de Enjuiciamiento Criminal, ed. 1935. Sin embargo, prueba de corroboración no se requiere para todos los elementos de un delito. El único requisito es que dicha declaración deberá tender a conectar al acusado con la comisión del delito. *Pueblo* v. *Baerga*, 70 D.P.R. 90; *Pueblo* v. *Segarra*, 70 D.P.R. 484; *Pueblo* v. *Rosario*, 68 D.P.R. 566. Tampoco es necesario que la prueba corrobo-

rativa sea directa o robusta, siempre que tienda a conectar al acusado con la comisión del delito. *Pueblo* v. *Rosario*, supra.

En la manipulación de una banca de boli-pool, entre otras cosas, (1) se recibe dinero para apuestas, (2) se celebra un sorteo para determinar el número premiado y (3) se paga el número premiado. La declaración de Ortiz claramente conectó al acusado con dichos segundo y tercer elementos de una banca de boli-pool, como dueño de la misma. La declaración de Núñez, el cómplice, fué por lo tanto suficientemente corroborada bajo la regla antes expuesta.

█ El décimo señalamiento es que la convicción del apelante es nula por ser la sección 10 inconstitucional, ya que viola la cláusula del debido procedimiento de la Ley Orgánica. El apelante dedica solamente página y media de un elaborado alegato a este punto. Afirma que la sección 10 no cumple las normas fijadas en *Pueblo* v. *Mantilla*, supra. Su razonamiento es que el concepto de "dueño" de un juego prohibido es vago, ambiguo e indefinido, porque el poseer tal juego es una "abstracción". También sostiene que la sección 10 debería exponer los detalles de los juegos prohibidos. Éstas son contenciones frívolas y se contestan por nuestra discusión en el primer error.

█ Bajo este señalamiento el acusado también alega que la sección 10 es nula porque no dispone que el acusado deberá haber actuado "voluntariamente o a sabiendas". La sección 10, a estos fines, es sustancialmente similar a la sección 4 de la Ley núm. 25 de 1935. Interpretando la sección 4, resolvimos una contención similar en *Pueblo* v. *Cardona*, supra, en el cual dijimos a la pág. 697: "Como se ve, la alegación de que el hecho se realizó 'a sabiendas' es necesario cuando se trata de la portación o conducción o de la impresión de los billetes, mas no lo es cuando la acusación va dirigida contra el que manipula el juego prohibido, como dueño, o contra la persona que vende los billetes. Y es natural y lógico

que así sea, pues es posible que una persona lleve o conduzca billetes o tickets o los imprima sin saber que han de utilizarse para violar la ley. Pero no es posible presumir que una persona que vende billetes de *bolipool* o que manipula dicho juego como dueño, agente o apoderado lo hace sin saber que está violando la ley. Si se exigiese al fiscal alegar y probar que el que vendió un ticket de *bolipool* o manipuló dicho juego como dueño lo hizo 'a sabiendas', ello equivaldría a admitir que la ignorancia de la ley es una buena excusa de su incumplimiento."

El undécimo error es que la pena impuesta al apelante de 5 a 10 años de presidio con trabajos forzados es excesiva. La sentencia fué de acuerdo con los términos de la sección 10 de la Ley núm. 220, la cual dispone una pena no menor de un año ni mayor de diez años. Nada encontramos en los autos que indique que el tribunal abusó de su discreción al imponer dicha sentencia. *Pueblo* v. *Báez*, 70 D.P.R. 609.

*La sentencia del tribunal de distrito será confirmada.*

Opinión disidente emitida por el Juez Asociado Sr. Todd, Jr.

Disiento. Considero que la declaración del testigo Daniel Ortiz Figueroa es insuficiente en derecho para corroborar la del cómplice Alejandro Núñez en tal forma que deje satisfactoriamente probado que el aquí apelante era dueño de una banca de Boli-Pool. La declaración de Ortiz no conectó ni clara ni en ninguna otra forma, a mi juicio, al apelante con la manipulación, como dueño de una banca de Boli-Pool, cualesquiera que sean los elementos necesarios para demostrar cómo es que se efectúa dicha manipulación, lo que no aparece probado tampoco.