EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* ELÍAS DONATIO MALDONADO, acusado y recurrente.

*Número:* CE-63-15    *Resuelto:* 30 de septiembre de 1963

*William Luyando Charneco,* abogado del apelante; *Rodolfo Cruz Contreras, Procurador General Interino, y Nilita Vientós Gastón, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Este caso surge de un accidente automovilístico y realmente sólo plantea cuestiones de hecho. El 15 de diciembre de 1961 el Presidente de los Estados Unidos, Hon. John F. Kennedy, visitaba a Puerto Rico. Él y su comitiva habrían de pasar a lo largo de la Avenida Baldorioty en su viaje del Aeropuerto Internacional hacia La Fortaleza, la residencia oficial del Gobernador de Puerto Rico. El accidente ocurrió en la intersección de la Avenida Baldorioty con la Calle Las Flores, en Santurce. En ese lugar la Calle Las Flores corre aproximadamente de Norte a Sur y la Avenida Baldorioty de Este a Oeste. Como cuestión práctica la Calle Las Flores intercepta allí cuatro calles o vías paralelas que corren de Este a Oeste, porque la Avenida Baldorioty consta de dos vías paralelas separadas entre sí por una isleta y además a cada lado de la avenida hay una calle marginal paralela a la misma. En cuanto a la forma en que ocurrió el accidente no hay récord taquigráfico pero las notas del Juez de Distrito, en donde se recogen las declaraciones de los testigos, son muy precisas y claras y parecen ser muy completas.

Tomando en consideración las notas detalladas de las de-

claraciones de los siete testigos que declararon, se desprende que lo hechos fueron los siguientes. La Sra. Rosario Prado de Sánchez, conductora de uno de los dos vehículos envueltos en el accidente, conducía su automóvil por la Calle Las Flores, viajando de Sur a Norte y llegó a la intersección de la Avenida Baldorioty. Hay allí un semáforo y la luz estaba roja para doña Rosario. El Teniente de la Policía, Alfredo Ortiz Aponte, quien era parte de la fuerza que estaba de vigilancia allí esa tarde, le dio paso (dice él) o le ordenó que pasara (dice ella) y doña Rosario continuó la marcha hacia adelante. Cruzó la calle marginal que corre paralela a la avenida por el lado Sur de ésta, cruzó la mitad de la avenida que lleva el tránsito de San Juan al Aeropuerto Internacional y continuó su marcha para cruzar la otra mitad de la avenida (la que lleva el tránsito del Aeropuerto a San Juan). Al entrar en esa tercera vía que cruzaba fue que ocurrió la colisión. Un vehículo que venía por la Avenida Baldorioty del Aeropuerto hacia San Juan (o sea, de Este a Oeste) conducido por el recurrente y el vehículo que conducía doña Rosario chocaron. Aunque hay declaraciones conflictivas podemos aceptar que el vehículo conducido por el recurrente le dio al de doña Rosario por el lado derecho y al frente.

El acusado y recurrente explica que cuando él venía por la Avenida Baldorioty, al llegar a esa intersección tenía la luz verde a su favor y que la policía no le ordenó detenerse; luego, él continuó la marcha como es lo usual y correcto. El teniente explicó que la policía se había hecho cargo del tránsito allí, que tenían detenido el tránsito de la Avenida Baldorioty para darle paso a los vehículos que transitaban por la Calle Las Flores y que en el lugar en donde ocurrió el accidente había un sargento de la policía que dirigía el tránsito que venía por la avenida del Aeropuerto hacia San Juan. Ningún sargento declaró en el juicio ni ningún policía declaró que estuviese controlando el tránsito en ese lugar en esos momentos. No hay un solo testigo que declarase haber visto a la policía deteniendo

el tránsito que venía por la avenida del Aeropuerto a San Juan. El recurrente y el conductor del vehículo que venía detrás del recurrente declaran que tenían la luz verde a su favor. Las declaraciones de los demás testigos completan otros detalles pero no añaden nada a lo esencial.

Es cierto, como señala el Procurador General, que "Todo conductor de vehículos deberá detenerse inmediatamente cuando un agente del orden público se lo requiriere" y que "No obstante . . . lo indicado por luces y señales, cualquier agente del orden público podrá variar lo que en las mismas se indicare, o impedir o variar el tránsito por cualquier vía pública si las circunstancias del tránsito a su juicio así lo ameritaren y será la obligación de todo conductor de vehículos . . . obedecer dicha orden o señal." La anterior cita es del texto de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 1151.

También estamos conscientes de que, debido al altísimo incidente de desgracias ocurridas con motivo de accidentes automovilísticos, nuestra sociedad no puede ser leniente con las personas que conducen vehículos de motor "de manera descuidada y atolondrada, despreciando desconsideradamente los derechos y la seguridad de otras" . . . 9 L.P.R.A. sec. 871.

Sin embargo, en este caso lo que surge de los hechos es que mientras el Teniente de la Policía le dio paso a doña Rosario para ésta cruzar la avenida de Sur a Norte con luz roja nadie detuvo al recurrente que transitaba por la avenida con luz verde a su favor. En estas circunstancias no se puede sostener la convicción del recurrente.

Concluimos que se cometió el error número 4 en el sentido de que la prueba ofrecida no justifica dicha convicción. *Se revocará la sentencia del Tribunal Superior y se absolverá al acusado.*