EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* POR-
FIRIO DE JESÚS ROBLES, acusado y apelante.

*Números:* CR-63-229 al CR-63-231      *Resueltos:* 11 de mayo de 1965

*Stanley L. Feldstein,* abogado designado por el Tribunal Supremo para ofrecer asistencia legal al acusado en apelación; *J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante, Porfirio de Jesús Robles, fue acusado y convicto por tribunal de derecho por los delitos de escala-

miento en primer grado (33 L.P.R.A. secs. 1591 y 1592), e infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico (25 L.P.R.A. secs. 416 y 418), luego de haber renunciado a juicio por jurado. Fue sentenciado a cumplir una pena de cinco a diez años de presidio con trabajos forzados por el delito de escalamiento, seis meses de cárcel por la infracción al Art. 6 de la Ley de Armas y de dos años y medio a cinco años de presidio con trabajos forzados por la infracción al Art. 8 de la referida ley.

En apelación señala la comisión de varios errores por el tribunal sentenciador. El Lic. Stanley Feldstein, a quien designamos para representar al apelante, ha radicado un laborioso y bien razonado alegato. Tratamos a continuación tales apuntamientos.

(1) "La única corroboración del testimonio del cómplice consistía de evidencia inadmisible por ser el fruto de un registro ilegal y dicha evidencia, aunque fuera admisible, era insuficiente como corroboración."

La regla para determinar si la prueba de corroboración de un cómplice es suficiente la reiteramos más recientemente en *Pueblo* v. *Rodríguez Hernández*, 91 D.P.R. 183 (1964), en la siguiente forma:

"Si bien la prueba de corroboración debe levantar algo más que una mera sospecha contra el acusado, no es necesario que vaya tan lejos como para establecer por sí misma y sin la ayuda del testimonio del cómplice, que el acusado cometió el delito imputádole. En repetidas ocasiones hemos dicho que no es necesario que la prueba de corroboración sea directa, ni más fuerte, siempre que sea suficiente para relacionar al acusado con lo comisión del delito. *Pueblo* v. *Adorno*, 81 D.P.R. 518 (1959) ; *Pueblo* v. *Palou*, 80 D.P.R. 364 (1958) ; *Pueblo* v. *Portalatín*, 72 D.P.R. 152 (1951) ; *Pueblo* v. *Rosario*, 68 D.P.R. 566 (1948)."

A continuación copiamos del resumen de la prueba que hizo el Procurador General en su memorándum, pero con ciertas aclaraciones para su mayor precisión.

El testigo Ángel Cruz Santana dijo que el día de los hechos José Luis Sánchez y el apelante lo fueron a buscar a un bar en Cataño y lo invitaron a dar un paseo en el vehículo de motor del apelante Porfirio de Jesús Robles, que era un Taunus de color verde. Fueron hasta Ciales, llegaron hasta el negocio de Cástulo Torres, donde compraron cigarrillos. Luego fueron hasta otro sitio y durmieron en el carro hasta las once de la noche. El apelante los despertó y viraron hasta el negocio donde habían comprado los cigarrillos. En ese momento el apelante dijo que iba a robar allí. José Luis Sánchez y el testigo cogieron una barra, dos destornilladores y una llave fija, rompieron "el negocio por detrás de una tabla" se metieron en él y obtuvieron dinero de la vellonera, un jamón, ron y mortadella. Mientras ellos escalaban, el apelante se quedó afuera con el revólver, velando en el carro. Identificó el revólver, la barra, los dos destornilladores y la llave. Todo este material fue admitido en evidencia sin objeción por parte de la defensa.

William Morales Sierra declaró que allá para el 29 de agosto de 1961 prestaba servicios como detective en la zona de Ciales; que con motivo de una serie de escalamientos acaecidos en ese sector, habían recibido informaciones de parte de los perjudicados sobre la presencia de un carro pequeño amarillo. En el último caso de Cástulo Torres había la sospecha de tres individuos que habían estado en el negocio escalado y que fue informado que uno de ellos era Porfirio de Jesús Robles, a quien el testigo conocía. Así las cosas, el 29 de agosto, Morales Sierra vio al apelante conduciendo un vehículo marca Taunus. Morales y otro agente que lo acompañaba se identificaron como miembros de la policía y le exigieron que les enseñara su licencia. Al verificar que Porfirio no era chófer autorizado, lo arrestaron y en ese momento se registró el automóvil en el cual encontraron una bolsa de papel estrasa conteniendo monedas americanas, vellones de cinco centavos. Una vez ocupado el dinero, los agentes lleva-

ron a José Luis Sánchez y al apelante al carro de la policía estacionado junto al Taunus. Luego el agente Morales volvió al taunus y descubrió y ocupó el revólver de debajo de la alfombra. Más tarde dice: "Lo trajimos al automóvil y después que se volvió a registrar el automóvil, en la parte del lado derecho . . . (Interrupción)". (T.E. pág. 29.) Luego de declarar sobre el hallazgo del revólver se le pregunta:

"Después de ocupar el revólver encontró algo más en ese carro? —Después se encontró un pedazo de machete.

. . . . . . . . .

"P.—Qué más? —Nada más se encontró allí." (T.E. pág. 31.)

A preguntas de la defensa dijo lo siguiente:

"P. En el cuartel volvieron a registrarlo? —Volvimos en el cuartel y los interrogamos sobre otros casos.

"P. Y cuándo encontró el revólver? —Cuando registramos el automóvil allá.

. . . . . . . . .

"Lo traigo a él al automóvil y volvimos otra vez a hacer otra inspección del automóvil." (T.E. pág. 33.)

Declaró, además, que ocuparon en el baúl las herramientas descritas por el testigo Cruz Santana.

Luego llevaron a Sánchez y al apelante al cuartel de Ciales y procedieron a interrogarlos. Porfirio de Jesús les indicó que había acompañado a Sánchez y a Cruz hasta la tienda de Cástulo Torres, donde se había cometido el escalamiento y que la evidencia del caso, el ron, lo había dejado guardado en una casa en Trujillo Alto. Fueron allá y encontraron el producto de los escalamientos, las cajas de ron y cigarrillos, debajo de una cama.

Cástulo Torres Hernández era el dueño del negocio escalado. La noche del 27 de agosto de 1961 cerró su negocio alrededor de las diez y media y lo abrió a las siete de la mañana. Al investigar encontró que le habían llevado varias botellas de ron, la alcancía de la vellonera, 14 libras de harina de café, jamones, cigarrillos y misceláneas. Como a las nueve o

nueve y media de esa noche el acusado estuvo en su negocio acompañado de dos hombres más. Más tarde identificó a Cruz Santana y a José Luis Sánchez como los acompañantes del apelante. El testigo atestó que ellos compraron cigarrillos y que estaban en un carro pequeño, color gris, guiado por el apelante. Notificó a la policía "lo que me pasaba y fueron a investigar y al día siguiente vino la policía a notificarme que habían cogido a dos."

No tenemos duda de que el testimonio del cómplice fue plenamente corroborado por (a) la admisión del apelante de que acompañó a Cruz a la tienda de Cástulo Torres donde habían cometido el escalamiento, y (b) el testimonio de Cástulo Torres situando al apelante en el lugar de los hechos poco antes de la penetración, acompañado por el cómplice, quien fue identificado por Torres y, (c) el hallazgo de los objetos hurtados en el lugar indicado por el apelante. *Pueblo* v. *Rodríguez Hernández*, supra; *Pueblo* v. *de Jesús*, 73 D.P.R. 752 (1952).

Sostiene el apelante, sin embargo, que la ocupación del révolver y las herramientas fue ilegal y, por lo tanto, no debió admitirse en' evidencia a los efectos de probar las infracciones a los Arts. 6 y 8 de la Ley de Armas y que como consecuencia las admisiones del apelante no son admisibles, pues fueron obtenidas mediante su confrontación con evidencia obtenida ilegalmente. Se arguye que de acuerdo con la doctrina que establecimos en *Pueblo* v. *Sosa Díaz*, 90 D.P.R. 622 (1964), el registro de un automóvil no es razonable cuando tiene lugar "en ausencia del apelante, cuando ya éste había sido arrestado y se encontraba bajo custodia policiaca, en un lugar distinto y apartado de aquél en que se hallaba el vehículo" y por lo tanto la evidencia obtenida mediante tal registro no es admisible por mandato constitucional. *Pueblo* v. *Rodríguez Rivera*, 91 D.P.R. 456 (1964).

La prueba demuestra que los agentes del orden público detuvieron al apelante en un campo de Ciales mientras con-

ducía un automóvil de su propiedad marca Taunus, junto con José Luis Sánchez. Se le exigió que mostrara su licencia. Dijo no ser conductor autorizado. Al preguntársele al policía Morales, en contrainterrogatorio, por qué fue que detuvieron dicho vehículo, contestó que "habíamos tenido una serie de escalamientos en Ciales . . . . En el último caso de Cástulo Torres había la sospecha de tres individuos que habían en un negocio y fuí informado que uno era Porfirio de Jesús." Declaró, además, que conocía al apelante. Entonces uno de los agentes los arrestó, registró el vehículo y en el baúl encontró una bolsa de papel de estrasa conteniendo $6.15 en vellones de cinco centavos y las herramientas antes descritas. Dicho agente llevó al apelante y a su acompañante José Luis Sánchez al automóvil de la policía que había sido estacionado cerca del Taunus, y el agente volvió al automóvil del apelante, lo registró de nuevo y encontró un revólver debajo de la alfombra en la parte derecha del asiento delantero. A preguntas del juez sentenciador, el agente declaró que arrestó al apelante por no ser chófer autorizado.

Las circunstancias del caso ante nos son muy distintas a las que prevalecían en *Sosa Díaz*, supra, y en *Preston* v. *United States*, 376 U.S. 364 (1964), pues en éstos el acusado se encontraba en un cuartel de policía cuando el registro del vehículo se efectuó lejos de allí. Por el contrario, en éste se trataba de un registro incidental a un arresto legal—coetáneo con el arresto—por lo que la incautación de los bienes en cuestión estuvo justificada, de acuerdo con lo dicho en *Preston*, supra. El registro del vehículo del apelante efectuado inmediatamente después de su arresto, mientras éste se encontraba en su automóvil Taunus e inmediatamente después que el apelante fue llevado al vehículo de la policía estacionado cerca del Taunus, fueron registros razonables, incidentales al arresto, y el dinero, las herramientas y el revólver encontrados en el curso de tales registros eran, por lo tanto, admisibles en evidencia.

Sin embargo, en *Sosa Díaz* también dijimos que "en ausencia de circunstancias especiales, la mera comisión de una infracción menor de tránsito no autoriza un registro del vehículo. Debe existir, repetimos, una justificación adecuada para ello." Por lo tanto, debemos resolver si de acuerdo con las circunstancias de este caso y en vista de la referida doctrina expuesta en *Sosa Díaz*, fueron o no fueron legales los registros del vehículo del apelante realizados inmediatamente después de su arresto por conducir sin estar autorizado para ello. A ese fin es necesario determinar el alcance preciso de la referida doctrina.

En *United States* v. *Rabinowitz*, 339 U.S. 56, 66 (1950), se dijo que la legalidad de un registro sin orden de allanamiento depende de si el registro es razonable y esto a su vez depende de los hechos y circunstancias—"la atmósfera total" del caso. En *United States* v. *Di Re*, 332 U.S. 581, 585 (1948), se dijo que de acuerdo con la doctrina de *Carroll* v. *United States*, 267 U.S. 132 (1925), existe una distinción entre lo que es un registro razonable en el caso de un automóvil y en el caso de una residencia o local fijo. Pero en *Henry* v. *United States*, 361 U.S. 98 (1959), se añadió que tal distinción no había eliminado el requisito de causa probable. En *United States* v. *One 1963 Cadillac Hardtop*, 224 F.Supp. 210 (U.S.D.C. E.D. Wis.—1963), se dijo que:

"Existe un razonamiento común a través de todos los casos que sostienen un registro sin orden de allanamiento. El que registra debe tener en mente algo específico que busca y debe tener motivo razonable para creer que se encuentra en el lugar que se registra . . . inicialmente el objetivo del registro debe ser incidental al particular arresto, en el caso de una violación de una señal de parada, no hay fruto del delito. El medio por virtud del cual se cometió el delito es el vehículo mismo. Además, no hay contrabando relacionado con tal violación. El arresto debe proveer la razonabilidad. Resolver lo contrario violentaría la protección misma provista por los requisitos constitucionales de la enmienda 4ta."

En este caso se sostuvo el registro de un automóvil subsiguiente a un arresto por violar una señal de parada en una calle debido a que la policía reconoció a los ocupantes como sospechosos de violar las leyes de narcóticos, que uno de ellos usaba drogas y había sido recluido por ello y que otro actuaba en forma incorrecta y anormal.

En *Ríos* v. *United States*, 364 U.S. 253 (1960), se dijo que si los hechos eran que dos oficiales de la policía de Los Ángeles, vestidos de paisanos y transitando en un automóvil sin identificación policíaca, observaron un taxi estacionado en un solar de estacionamiento a eso de las diez de la noche en un vecindario conocido por "actividad en narcóticos"; que vieron a un individuo mirar calle arriba y calle abajo, cruzar el solar y subirse al taxi; que no lo habían visto antes, ni tenían información alguna de que alguien estuviese dedicado a alguna actividad criminal en ese sitio a esa hora; que los policías se acercaron al vehículo con el fin de una investigación de rutina y sin intención de detener al acusado más allá de lo necesario a los fines del propósito de investigar y que a petición de los policías el acusado les mostró un paquete que resultó contener narcóticos; que tan pronto como esto ocurrió se podía realizar un arresto legal; entonces la policía tenía causa razonable de que se estaba cometiendo un delito grave en su presencia.

La referida regla de *Sosa Díaz* impide el registro de un vehículo sólo en casos de (a) una infracción menor de tránsito y, (b) en ausencia de circunstancias especiales. En *State* v. *Scanlon*, 202 A.2d 448 (N.J.A. Div. 1964), se dijo que el arresto de una persona por no tener consigo su licencia de conducir no justificaba el registro de su automóvil.[1] En *State* v. *Cuellar*, 200 A.2d 729 (Conn. 1964), se arrestó al acusado por manejar sin licencia de conducir. El arresto se

---

[1] En este caso el tribunal añadió por vía de *obiter dictum* que de las violaciones de reglas de tránsito no surgen las inferencias que justifican los registros en estos casos.

realizó unas horas después de haberse registrado su automóvil y encontrarse en el mismo unos artículos robados de una tienda. Se dijo que el registro no fue incidental a un arresto legal. (²) Asimismo se ha dicho que el virar en forma de "U", en violación del Código de Vehículos y en tener desperfectos en el vehículo indicativos de un posible accidente, no justificaban el registro del vehículo. *People* v. *Molarius*, 303 P.2d 350 (Cal. 1956) ; *People* v. *Gale*, 294 P.2d 13 (Cal. 1956). En otros casos se justificó el registro, luego de hacer detener el vehículo por tener luces defectuosas o porque lo conducían dando bandazos por la carretera debido a circunstancias especiales consistentes en el movimiento de los ocupantes de ocultar algo debajo del asiento, o de tirar un paquete fuera del vehículo que resultó contener cigarrillos de marihuana. *Harris* v. *State*, 354 S.W.2d 155 (Crim. Appeals Texas— 1962) ; *People* v. *Anders*, 333 P.2d 854 (Cal. 1959) ; *People* v. *Sanson*, 319 P.2d 422 (Cal. 1957). Véanse, además, *Kuhl* v. *United States*, 322 F.2d 582 (9th Cir. 1963) ; *Hart* v. *United States*, 316 F.2d 916 (5th Cir. 1963) ; *People* v. *Zeigler*, 100 N.W.2d 456—véase en particular la opinión disidente del Juez Smith, pág. 463— (Mich. 1960).

En *State* v. *Freeland*, 125 N.W.2d 825 (S.C., Iowa 1964), un alguacil detuvo un automóvil porque la tablilla no era visible; estaba cubierta de pintura. En la vecindad se habían cometido una serie de escalamientos. Reconoció al conductor como una persona en libertad bajo palabra. El vehículo había estado estacionado a media noche frente a un establecimiento comercial. El alguacil ordenó investigar si el establecimiento había sido escalado mientras examinaba la licencia del conductor y al recibir información que en efecto lo había sido, ordenó a los ocupantes del vehículo que salieran del mismo. Para poder salir éstos del automóvil fue necesario remover

---

(²) También en este caso el tribunal añadió que en la mayoría de las jurisdicciones el derecho de registrar un automóvil depende del derecho de arrestar por la sospecha de la comisión de un delito grave más bien que por la violación de un reglamento de tránsito.

una caja que contenía artículos que fueron identificados como suyos por el dueño del establecimiento comercial en cuestión. Se resolvió que hubo causa probable para creer que los acusados habían cometido un delito y, por lo tanto, su arresto y el registro fue válido. En *State* v. *Durban*, 367 S.W.2d 619 (Mo. 1963), se arrestó al conductor de un automóvil debido a que no mostraba la tablilla en forma apropiada. Un policía notó por la ventanilla posterior del vehículo que dentro del mismo había un radio con el precio marcado y una caja de destornilladores nuevos. A su solicitud, el conductor abrió la tapa del baúl del vehículo para inspeccionarlo. Se les requirió a los acusados que pasasen detrás del carro y el policía registró el auto en busca de armas como medida para su protección y la de su compañero. Durante ese registro encontró entre los asientos, cubiertos por una manta, varios artículos que luego se determinó habían sido robados de un establecimiento comercial la noche antes. Se resolvió que el registro en cuestión fue válido y, por lo tanto, los bienes encontrados admisibles en evidencia porque se realizó en relación con un arresto legal con el fin de buscar armas como medida de protección de los oficiales de la policía. En *People* v. *Bannan*, 125 N.W.2d 875 (Mich. 1964), *certiorari* denegado, 33 U.S.L. Week 3244, dos agentes de la policía detuvieron un automóvil a la entrada de un motel, a las dos de la madrugada. Cuando el acusado se desmontó del vehículo y se encontró con uno de los agentes, éste le informó que lo habían detenido por desobedecer una luz roja. El acusado mostró su licencia de conducir y la del vehículo el cual estaba a nombre de otra persona que, según el acusado, era su cuñado. Mientras tanto el otro agente fue a hablar con el otro ocupante del automóvil. El acusado y su acompañante dieron información conflictiva sobre el lugar a donde se dirigían, propósito, etc. Uno de los agentes se dirigió al vehículo, abrió el baúl del mismo y allí encontró muchas herramientas de escaladores. Se les esposó y fueron llevados al automóvil de la policía. En

el curso de un detenido registro del automóvil se encontró escondido un revólver calibre 38. El acusado fue convicto de portar un arma escondida y las referidas herramientas. Radicó moción para suprimir la evidencia en cuestión por alegar que se había realizado un registro ilegal. Se sostuvo que el registro fue incidental a un arresto (acto este que ocurrió cuando se detuvo el vehículo y se les informó a los ocupantes del mismo que se les había detenido por desobedecer una luz roja), pues los agentes tenían conocimiento de que:

(1) eran las dos de la madrugada de un domingo

(2) se les detuvo por desobedecer una luz roja

(3) el automóvil no estaba registrado a nombre de ninguno de sus dos ocupantes

(4) había una botella abierta de Vodka en el asiento delantero

(5) los ocupantes eran de Indiana; el conductor mostró licencia de conducir de Florida

(6) ambos dieron versiones conflictivas con respecto a sus residencias, destino, propósito del viaje y en cuanto al término de su permanencia.

En este caso se concluyó que la disposición de la constitución del estado de Michigan al efecto de que lo provisto sobre registros ilegales no se interpretará en el sentido de excluir como prueba en cualquier procedimiento criminal cualquier droga narcótica, arma de fuego, bomba, explosivo o cualquier otra arma peligrosa, obtenida por un agente de la policía fuera de los límites de la propiedad en que esté situada una residencia en dicho estado, no infringe la constitución de los Estados Unidos. Pero, aparte de esa disposición determinó el Tribunal Supremo de Michigan que existe una diferencia entre el derecho de registrar un hogar y un automóvil y que la razonabilidad de registrar este último es una cuestión judicial a ser determinada en vista de las circunstancias bajo las cuales el registro se lleva a cabo; cuando el registro se realiza como rutina luego de la violación de una regla de tránsito, no es válido, pero en este caso los hechos y las declaraciones conflictivas del apelante y su asociado eran

inconsistentes e irreconciliables con las de unos inocentes viajeros por la carretera.

En *State* v. *Harris*, 121 N.W.2d 327 (Minn. 1963), unos oficiales de la policía, en el curso de la ronda que realizaban en un vehículo no identificado como de la policía, a eso de la media noche notaron un automóvil estacionado en una calle a un ángulo fuera de lo común con la parte posterior apuntando hacia una entrada en que se encontraba estacionado un remolque con un bote. Notaron que el conductor miraba hacia la casa donde estaba situado el remolque. Ordenaron al conductor desmontarse del vehículo y le preguntaron qué hacía. Dijo que estaba perdido. Notaron un bulto negro en el asiento de atrás y le pidieron al acusado que se los mostrase y éste lo abrió diciendo que contenía ropa vieja, pero los oficiales encontraron en él un revólver calibre 22. Esposaron al acusado, y al continuar el registro encontraron otras armas y otros objetos que luego se determinó habían sido robados. La regla con respecto al arresto en Minnesota es similar a la establecida en Puerto Rico. Al concluir que en este caso el registro estaba justificado y la evidencia que produjo admisible, el tribunal se basó en que (a) el hecho ocurrió tarde en la noche; (b) el automóvil del acusado estaba estacionado en un ángulo peculiar; y (c) el acusado ofreció una excusa improbable para justificar el encontrarse en el área. Expresó el tribunal que de todo esto surgía una razonable inferencia que justificaba investigar la situación. El arresto ocurrió al ordenar la policía al acusado que se desmontara del vehículo y como esto se realizó por causa probable, el registro que se hizo como incidental del mismo también fue legal. El tribunal también apoyó su conclusión en el hecho de que el acusado no se opuso al registro, y por lo tanto, consintió en el mismo y tal consentimiento constituye una renuncia del derecho a objetar luego que el registro fue irrazonable.

En *People* v. *Cowman*, 35 Cal. Rptr. 528 (1963), dos policías, mientras realizaban una ronda en un automóvil,

notaron a eso de la media noche que el vehículo del acusado estaba estacionado cerca de una intersección. Observaron que en el mismo habían tres individuos mirando hacia un motel. Luego de pasar la policía por su lado, encendieron los focos delanteros del vehículo, los apagaron e iniciaron la marcha y se detuvieron más adelante en otra calle. Se conducía el vehículo en forma legal. Se acercaron los guardias, pidieron identificación y le preguntaron al dueño del automóvil si lo podían registrar. Dijo que no le importaba. Al hacerlo, encontraron una escopeta de cañón recortado y varios cartuchos. Dijo el tribunal que los reglamentos de tránsito, el censo de tránsito, la identificación de personas en casos apropiados, y muchas otras causas, justifican el que la policía detenga vehículos bajo circunstancias que no implican arresto o imputación de delito. En este caso, el acto de los oficiales de la policía de detener el vehículo del acusado no constituyó una invasión impropia de su derecho de privacidad, ni una violación de sus derechos constitucionales. Añadió que:

"La razón fundamental en todas estas decisiones es que un oficial de la ley, empleado para mantener la paz y evitar el crimen, además de aprehender los criminales después de los hechos, tiene tanto el derecho como la obligación de realizar investigaciones razonables de todas las actividades sospechosas aunque la naturaleza de las mismas no constituyan fundamento suficiente para justificar un arresto o registro de la persona o los bienes de los sospechosos. Policías de experiencia naturalmente desarrollan una habilidad para percibir lo que no es usual y lo sospechoso, lo que es de valor enorme en la difícil tarea de proteger la seguridad de los ciudadanos que cumplen con la ley. Este beneficio no debe perderse porque el récord frío ante el tribunal revisador no contenga todas las percepciones particularizadas que pudieran haber sido tan significativas en el escenario de los hechos."

En *People* v. *Watkins*, 166 N.E.2d 433 (Ill. 1960), se dijo que aunque el arresto por estacionar en zona prohibida no justifica de por sí el registro del automóvil, otras infracciones de las leyes de tránsito—como por ejemplo la ausencia

de tablillas—podrían justificarlo. Así se resolvió en *Duncan v. State*, 234 S.W.2d 835 (Tenn. 1950). Véase la anotación *Search and Seizure Before Arrest*, en 89 A.L.R.2d 715, 721-746.

En *Gaskins v. State*, 89 So.2d 867 (Fla. 1956), se dijo que era legal el registro de un camión dejado sin luces en la intersección de una carretera, con sus ruedas izquierdas sobre el pavimento. Se arrestó al acusado, dueño del vehículo por el estacionamiento ilegal y luego por violar las leyes de la lotería al encontrarse en el vehículo unas papeletas de lotería y, por lo tanto, éstas eran admisibles en evidencia.

Resulta evidente de lo expuesto que las reglas aplicables a casos como el que nos ocupa pueden resumirse así:

(1) La legalidad de un registro sin orden de allanamiento depende de si el registro es razonable y esto a su vez depende de los hechos y circunstancias—la atmósfera total—del caso.

(2) Existe una distinción entre lo que es un registro razonable en el caso de un automóvil y en el caso de una residencia o local fijo, pero tal distinción no ha eliminado el requisito de causa probable.

(3) Una mera infracción menor de tránsito no justifica el registro de un automóvil.

(4) Pero circunstancias especiales pueden proveer la justificación necesaria, en adición a una infracción de tránsito.

En los casos citados previamente se hace referencia a varias de tales circunstancias especiales, como por ejemplo que la policía (1) reconoció a los ocupantes del vehículo como sospechosos de violar las leyes de narcóticos y a uno de ellos por ser adicto, y notó que el otro actuaba en forma anormal; (2) notó el movimiento de los ocupantes de ocultar algo o tirarlo fuera del vehículo; (3) sabía que en el vecindario se habían cometido varios escalamientos y reconoció al conductor como una persona en libertad bajo palabra, y notó que éste había estacionado el vehículo frente a un establecimiento

comercial que había sido escalado; (4) vio mercancía nueva dentro del vehículo—el registro se consideró válido en relación con un arresto legal, pues se realizó con el fin de buscar armas como medida de protección de los oficiales de la policía; (5) realizó un registro válido del vehículo porque (a) el hecho se llevó a cabo en la noche, (b) el vehículo estaba estacionado en forma peculiar y (c) el acusado ofreció una excusa improbable—estar perdido—para justificar el encontrarse en el área; (6) se acercó al vehículo y le preguntó al dueño si lo podía registrar y lo registró al éste contestar que no le importaba. En *Cowman*, supra, se dijo que la policía tiene tanto el derecho como la obligación de realizar investigaciones razonables de todas las actividades sospechosas aunque la naturaleza de las mismas no constituya fundamento suficiente para justificar un arresto o el registro de la persona o de los bienes de los sospechosos; los reglamentos de tránsito, el censo del tránsito, la identificación de personas en casos apropiados, y muchas otras causas, justifican el detener vehículos bajo circunstancias que no implican arresto o imputación de delito; (7) (a) detuvo el vehículo por la violación de una regla de tránsito a las dos de la madrugada, y (b) ambos ocupantes del vehículo dieron versiones conflictivas con respecto a su residencia, destino, propósito de viaje y término de su permanencia.

◼ En el caso ante nos, el récord demuestra las siguientes circunstancias que, a juicio nuestro, justificaron el registro del automóvil:

(a) La policía tenía conocimiento de una serie de escalamientos en el área de los hechos.

(b) Común a todos era la presencia de un automóvil pequeño que unos dijeron era de color amarillo y otro dijo que era de color gris.

(c) En relación con el escalamiento en el caso ante nos, el perjudicado informó a la policía las circunstancias del suceso, inclusive que la noche antes estuvieron en su estableci-

miento tres hombres y presumiblemente al informar a la policía lo que le pasaba debió describirlos, pues el policía Morales testificó que en relación con el referido escalamiento se sospechaba de tres individuos y que fue informado que uno era el apelante, a quien Morales conocía.

(d) El referido policía vio al apelante manejando un automóvil pequeño, lo detuvo, le exigió su licencia de conducir y entonces éste confesó que no estaba autorizado para conducir.

(e) Se arrestó al apelante por la referida violación de la Ley de Vehículos y Tránsito (9 L.P.R.A. secs. 721 y 722).[3]

---

[3] El Departamento de Obras Públicas informa que durante los años 1962, 1963 y 1964, hubo un promedio anual de unos 33,000 accidentes en que murieron un promedio de unas 400 personas y un promedio de 16,000 resultaron heridas. La Oficina del Comisionado de Seguros informa que durante 1961, 1962, 1963 y 1964, las compañías aseguradoras de vehículos de motor cobraron las siguientes primas y pagaron las siguientes pérdidas.

| Tipo de Seguro | Año | Primas Cobradas | Pérdidas Pagadas |
|---|---|---|---|
| Lesiones Personales | 1961 | $6,471,238 | $3,046,295 |
| " " | 1962 | 6,918,218 | 3,404,326 |
| " " | 1963 | 8,733,395 | 3,359,547 |
| " " (1er. semestre) | 1964 | 4,949,049 | 2,096,597 |
| Daños a la Propiedad | 1961 | 3,161,535 | 1,450,678 |
| " " " | 1962 | 3,418,965 | 1,817,235 |
| " " " | 1963 | 4,044,595 | 2,149,654 |
| " " " (1er. semestre) | 1964 | 2,267,383 | 1,155,535 |
| Daños físicos auto | 1961 | 4,618,723 | 2,361,037 |
| " " " | 1962 | 5,620,387 | 2,949,278 |
| " " " | 1963 | 6,914,365 | 3,937,868 |
| " " " (1er. semestre) | 1964 | 4,269,957 | 2,515,911 |

Estas estadísticas demuestran que la situación del tránsito en Puerto Rico es sumamente crítica. Cf. *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 19 (1964); *Pueblo* v. *Donatio Maldonado*, 89 D.P.R. 101 (1963). El conducir sin licencia presupone falta de pericia y desconocimiento de los reglamentos y medidas de seguridad del tránsito. A la luz de estas realidades, la referida infracción que expone a conductores y ocupantes de vehículos y a los viandantes a mayores e inminentes peligros, no puede conceptuarse como una "mera infracción de tránsito".

(f) Se procedió a realizar dos registros del vehículo inmediatamente después del arresto y como resultado se encontraron en el vehículo un arma, las herramientas usadas en el escalamiento y parte de la mercancía robada.

Estas circunstancias claramente revelan que en el caso ante nos, no se trataba de un registro del vehículo meramente por razón de una mera infracción menor de tránsito. La policía buscaba al apelante en relación con el escalamiento del establecimiento de Cástulo Torres. Sabía que se trataba de un automóvil pequeño. Esta gestión constituía parte de una investigación de una serie de escalamientos en el área. De estas circunstancias, similares a las de los casos de *Freeland,* supra, *Durban,* supra, *State* v. *Harris,* supra, y *Cowman,* supra, surgía una razonable inferencia que justificaba investigar la situación y los registros del automóvil inmediatamente después de un arresto legal.

■ Debemos apuntar, además, que el planteamiento en cuestión es tardío, ya que se hace por primera vez en apelación. Como dijimos en *Pueblo* v. *Díaz Cintrón,* 91 D.P.R. 146 (1964), "el procedimiento para impedir que evidencia ilegalmente obtenida sea presentada, es mediante moción radicada antes del juicio en la cual se solicita su supresión. *Pueblo* v. *Nieves,* 67 D.P.R. 305 (1947)." Pero aclaramos que "[c]uando por el examen directo o de repreguntas de los testigos de cargo resulta o en cualquier otra forma es admitido, que los artículos que son ofrecidos en evidencia han sido ilegalmente obtenidos, es el deber de la corte sentenciadora, al objetarse a dicha evidencia, rechazar su admisión." La Regla 234 de las de Procedimiento Criminal de 1963 permite este procedimiento. Como señala el Procurador General, de haberse suscitado oportunamente la cuestión de la supresión de la evidencia en cuestión, el fiscal hubiera tenido la oportunidad de aclarar cualquier aspecto de la declaración del agente Morales que estuviese dudoso. Aunque el referido procedimiento es el indicado y es, además, la mejor práctica, y en

este caso el abogado defensor por el contrario, anunció que no tenía objeción a la presentación de la evidencia en cuestión, resolvimos considerar el planteamiento sobre la improcedencia de la admisión de la referida evidencia por considerar que se trata de una cuestión fundamental. *Pueblo* v. *Torres Rosario*, 89 D.P.R. 144 (1963); *Pueblo* v. *Aletriz*, 85 D.P.R. 646 (1962); *Pueblo* v. *Oquendo*, 83 D.P.R. 234 (1961).

Sostener que el registro en este caso fue irrazonable porque no se realizó con el propósito de descubrir y ocupar objetos relacionados con la infracción de tránsito que motivó el arresto y porque el agente de la policía testificó que el arresto obedeció a que el apelante manifestó no tener licencia y no a la información recibida por la policía de que el apelante estaba implicado en el escalamiento, constituye un análisis restrictivo y una apreciación excesivamente técnica de una parte del récord del caso. Como se dijo en *Cowman*, supra, una transcripción fría de la totalidad de la situación "no contiene todas las percepciones particularizadas que pudieron haber sido significativas en el escenario de los hechos". Indudablemente, la policía en este caso detuvo el vehículo del apelante debido a que tenía información que relacionaba al apelante con el escalamiento. Su arresto por conducir sin licencia, que a nuestro juicio es índice de una sustancial irresponsabilidad, no fue otra cosa que un ingrediente adicional, es decir, otra de las circunstancias especiales que conjuntamente justificaron el registro.

2.—"Se admitió en evidencia testimonio que era claramente inadmisible en las circunstancias."

■ Se arguye que las declaraciones de dos testigos con el objeto de probar que en alguna ocasión anterior a la fecha de los hechos imputados al apelante, éste portaba un revólver similar al ocupado, es irrelevante, inmaterial y perjudicial, pues dicho testimonio no presentó ningún hecho material del crimen imputado, ni hecho que formara parte del *res gestae*, ni tampoco fue presentado para demostrar motivo, intención,

premeditación, malicia o plan común. Este error no se cometió. El juez sentenciador admitió los testimonios en cuestión para comparar la descripción del revólver que el testigo vio en la persona del apelante con la estructura del revólver de que se acusa a éste de haber portado luego.

■ Tampoco debe prosperar la objeción a la admisión de los objetos robados, encontrados por el agente que hizo el arresto en la residencia del apelante, pues este último le había informado que los referidos bienes se encontraban en dicho lugar. El récord sólo demuestra que el apelante informó a la policía que la evidencia del caso la había dejado guardando en una casa en Trujillo Alto y que la policía fue allá, a la residencia del apelante, y encontraron la mercancía robada a Cástulo Torres debajo de la cama. No aparece de la prueba si dicha residencia estaba o no habitada por otras personas y si lo estaba si éstas permitieron o no a la policía registrarla. Puede deducirse del récord que al indicar el apelante dónde guardaba la mercancía robada en efecto estaba consintiendo en que la policía la buscase y ocupase.

■ Por último, no se incurrió en error al admitirse la declaración del referido agente sobre las admisiones que le hiciera el apelante porque no informó sobre las mismas en su declaración ante el magistrado investigador. Aquél explicó que muchos detalles de la investigación no aparecen de la referida declaración original. No es requisito legal que así sea. A lo sumo, el apuntamiento en cuestión va dirigido a poner en tela de juicio la credibilidad del agente. No se nos ha demostrado razón alguna que justifique que intervengamos en la actuación del juez sentenciador sobre este particular.

3.—"No fue conservada la debida cautela en proteger los derechos del apelante durante el juicio."

■ Se arguye que hubo ausencia de prueba del *corpus delicti* en cuanto al elemento de la hora en que se cometió el delito. No es así, pues el perjudicado Cástulo Torres

declaró que cerró el negocio escalado como a las diez y media de la noche y notó la falta de los artículos robados a las siete de la mañana siguiente y que le habían escalado el establecimiento, y el testigo Cruz Santana declaró que llevaron a efecto el escalamiento poco después de las once de la noche del día de los hechos. Aunque este aspecto de la declaración de este cómplice no fue específicamente corroborado, no era necesario que lo fuera. *Pueblo* v. *Portalatín,* 72 D.P.R. 152, 161 (1951).

*Se confirmarán las sentencias dictadas en estos casos por el Tribunal Superior, Sala de Arecibo, en 14 de febrero de 1962.*

El Juez Asociado Señor Blanco Lugo disintió en opinión separada.

—O—

Opinión disidente del Juez Asociado Señor Blanco Lugo
San Juan, Puerto Rico, a 11 de mayo de 1965

Los hechos según relatados en la opinión de la mayoría demuestran a mi juicio que el registro realizado, aunque incidental a un arresto legal por una infracción a la Ley de Vehículos y Tránsito—conducir un vehículo de motor sin estar debidamente autorizado para ello—fue irrazonable. La irrazonabilidad no se refiere a la contemporaneidad con el arresto, sino a la falta de concurrencia de cualquiera de las circunstancias a que aludimos en *Pueblo* v. *Sosa Díaz,* 90 D.P.R. 622 (1964). No se realizó con el propósito de descubrir y ocupar objetos relacionados con la infracción cometida, como los frutos del mismo, o los instrumentos usados como medios para su perpetración, o para ocupar armas u otras cosas que podían utilizarse para escapar a la custodia. Ello es así porque no veo forma en que concebiblemente pueda hablarse en relación con la infracción de conducir sin estar autorizado de "frutos del delito" o instrumentos para su perpetración. Por otro lado, si algo demuestra el testimonio del agente que practicó el arresto y el subsiguiente registro

es que el apelante aceptó dócilmente las órdenes de los agentes policíacos y que no intentó ofrecer resistencia o evadirse. Si ello es así, ¿cómo puede justificarse el registro efectuado?

Es cierto que el detective manifestó que "había la sospecha [en el escalamiento de Cástulo Torres] de tres individuos que habían [*sic*] en su negocio y fue informado que uno era Porfirio de Jesús," pero, presumiendo que esto fuera suficiente para cumplir con la exigencia sobre la existencia de "motivos racionales" que permitían se practique un arresto sin orden —Art. 16(3) del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 243; cf. Regla 11(c) de las de Procedimiento Criminal de 1963—, el propio testigo reiteró una y otra vez que el arresto obedeció a que al detenérsele el apelante manifestó no tener licencia, no a la "sospecha" de que hubiese penetrado en el establecimiento escalado. ([1])

Una vez se concluya que el registro, aunque legal fue irrazonable, los objetos ocupados eran inadmisibles, al igual que cualquier admisión del apelante al detective pues obviamente fueron inducidas por la confrontación con los frutos del registro irrazonable. *Pueblo* v. *Rodríguez Rivera*, 91 D.P.R. 456 (1964).

¿Qué quedaría entonces como prueba de corroboración? Solamente, según el delegado del Procurador General, el testimonio del dueño del negocio escalado que sitúa al apelante junto a dos personas más en el negocio escalado a las 9:30 de la noche de los hechos, más de dos horas antes de la perpetración del delito, que tuvo lugar después de las 11:00 de la misma noche. No estimo que ese elemento de prueba, *por sí solo*, constituya suficiente corroboración. Es cierto que en algunos casos hemos considerado la presencia del acusado como un eslabón en la prueba de corroboración, pero ha sido *conjuntamente* con otras circunstancias.

---

([1]) Si éste hubiese sido el caso difícilmente hubiese podido realizarse el registro sin la correspondiente orden expedida por autoridad judicial competente. Cf. *Flores Valentín* v. *Tribunal Superior*, 91 D.P.R. 805 (1965).

Finalmente el Procurador da gran énfasis a una manifestación del acusado de que había estado en el negocio, pero ello no se refiere, como pretende interpretarse, al momento de la penetración en el negocio, sino a la visita a que aludimos en el párrafo anterior en que estuvo a comprar cigarrillos.

No puedo dejar pasar la ocasión de desaprobar la afirmación del escolio 3 al efecto de que conducir un vehículo de motor sin estar provisto de licencia no es una mera infracción de tránsito. A *contrario sensu*, se sostiene que es una infracción *grave*, fundándose en un evidente *non sequitur*: las graves circunstancias del tránsito y la alta incidencia de accidentes. En otras palabras, si no mediasen esas circunstancias o incidencia no sería grave, sino que sería una mera infracción. Tampoco las estadísticas que se citan constituyen base adecuada para tal conclusión pues no se indica claramente el número de accidentes o pérdidas en que intervinieron conductores no autorizados. Pretender utilizar los resultados totales, sin más, es francamente incurrir en un vicio de exageración.

En vista de que no hubo suficiente corroboración opino que procede la revocación de las sentencias y decretar la absolución del apelante.