EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN SEGARRA, acusado y apelante.

Núm. 14169.—*Sometido:* Noviembre 7, 1949. *Resuelto:* Noviembre 15, 1949.

*Vicente Palés Matos,* abogado del apelante; *Hon Procurador General Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo y Fernando Fornaris, Jr., Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Siete años han transcurrido desde que se cometió un asesinato por María Lugo y Juan Segarra, ya que, según se alega en la acusación, los hechos ocurrieron el 5 de marzo de 1942. Sin embargo, la acusación no se radicó en la Corte de Distrito de Mayagüez hasta más de dos años después, el 19 de septiembre de 1944. En octubre 13, 1944, se hizo alegación de inocencia por ambos acusados, quienes solicitaron juicio por separado y por jurado. El 24 de julio de 1945, el acusado Juan Segarra solicitó un pliego de particulares. Transcurre otro año y el 5 de junio de 1946, dicho acusado desiste de su petición anterior de juicio por jurado y solicita juicio por tribunal de derecho y la corte accede y celebra el juicio en dicho día. El 19 de agosto de 1946 lo declara culpable del delito de asesinato en segundo grado y dicta sentencia el 9 de septiembre de 1946, condenándolo a cumplir de diez a trece años de presidio con trabajos forzados. Apeló el acusado y solicitó la transcripción de evidencia, la cual fué ordenada por la corte el 19 de septiembre de 1946. Transcurren dos años y ocho meses y es entonces que el taquígrafo radica la transcripción el 20 de mayo de 1949, la cual es aprobada por la corte el 3 de junio y radicada en este Tribunal el 28 de junio, quedando sometido el caso el 11 de agosto de 1949, habiendo ya comenzado el término de vacaciones. Es decir, dos años se tomaron para radicar la acusación, otros dos para celebrar el juicio y tres años más para preparar la transcripción de evidencia.

Hemos detallado estos hechos para censurarlos. Nada encontramos en el expediente que justifique que un caso, de la

naturaleza del presente, se haya dilatado más de siete años en su tramitación. Decimos un caso de la naturaleza del presente porque se trata de un sórdido crimen en el cual Trinidad Padín, esposa de Juan Segarra, es muerta a tiros por María Lugo, amante del esposo, instada y aconsejada por éste. Se acusó conjuntamente a la amante María Lugo Acosta y al esposo Juan Segarra por el delito de asesinato genérico. Celebrado juicio por separado y por jurado, la primera fué declarada culpable de asesinato en segundo grado. A Segarra se le declaró culpable del mismo delito por la corte, imponiéndosele la sentencia antes mencionada. Apeló y en este recurso alega que la corte erró: 1) al entender que existió suficiente prueba de corroboración en cuanto a la declaración de María Lugo, que es un cómplice, 2) al considerar que la prueba es suficiente para establecer el delito de asesinato en segundo grado, y 3) que actuó movida por pasión, prejuicio y parcialidad.

Después de probada la causa de la muerte de Trinidad Padín por hemorragia pulmonar a consecuencia de una herida de bala, declaró María Lugo en síntesis, lo siguiente:

Que está cumpliendo sentencia por haber dado muerte a Trinidad Padín; que hacía cinco años era la amante de Juan Segarra, sabiendo que era casado con Trinidad Padín; que el 4 de marzo de 1942, ella, el acusado y Angel Zapata, hicieron un viaje de Mayagüez a San Juan en el automóvil del acusado, regresando el día 5 a Mayagüez; que en todo el trayecto entre San Juan y Mayagüez, ella y el acusado venían discutiendo porque ella se quejaba de que Trinidad Padín la perseguía, la insultaba y no la dejaba vivir tranquila, y ella le decía al acusado que la sacara de Mayagüez y éste le contestaba que ella tenía un arma en su casa para defenderse; que ella le dijo que no quería matar a Trinidad Padín y el acusado le dijo: "Tú eres una zángana, tú como dueña de casa tú te puedes defender. Tú tienes que proceder." (Transcripción de evidencia, pág. 25.) Le contestó ella entonces que de ninguna manera la mataría, que lo que

quería era que la sacara de allí, y que así siguieron discutiendo hasta llegar a Arecibo y luego hasta Mayagüez; que la dejaron cerca de su casa; que a la hora llegó el acusado y cuando estaba comiendo llegó Trinidad Padín y desde la acera la insultó; que ella salió al balcón y le dijo que se fuera y no la insultara en su casa, contestándole Trinidad Padín: "Tú eres una puta, y vives con ese sinvergüenza que está allí, que salga para matarlo también"—transcripción de evidencia, pág. 28—que ella se volvió adentro y entonces salió el acusado del comedor para la sala y le dijo: "Toma, mátala, que ésa es una perra" y le dió el revólver, diciéndole: "Debes matarla. Nosotros tenemos que defendernos", (id., id.) contestándole ella que no la mataba y entonces la cogió por el brazo, la apretó fuertemente y le dijo: "Si tú no la matas a ella, yo te mato a tí", (id., pág. 29); que entonces ella, llena de miedo y nerviosidad, le disparó a Trinidad Padín por entremedio de la reja del balcón; que ella compró el revólver a Gonzalo Almodóvar con dinero que le dió el acusado; que ella se lo dió al acusado porque no quería tenerlo pero éste se lo llevó de nuevo, diciéndole que era para que ella se defendiera si esa mujer venía a molestarla; que si ella mató a Trinidad Padín fué obligada por el acusado. En el contrainterrogatorio, declaró que varias veces Trinidad Padín y ella habían tenido altercados y que Trinidad Padín la había atacado y herido; que el mismo día de los hechos declaró ante el fiscal asumiendo responsabilidad por los hechos, debido a que el acusado la había amenazado con un revólver con matarla si no lo defendía, pero que a los seis días, ella voluntariamente pidió la llevaran donde el fiscal y sin promesas ni ofertas de ninguna clase, declaró la verdad de los hechos; que ella no le tiró a Trinidad Padín con la intención de matarla; que después de los hechos, cesaron sus relaciones con el acusado; que en el juicio de su caso ella no declaró; que ella cree que el acusado debe ser castigado por ser el verdadero culpable.

Veamos ahora la prueba que sirvió de base para corroborar la declaración de María Lugo: Nicolás Pérez Millán declaró que el día que ocurrió el crimen él venía de su trabajo y al pasar por la casa de María Lugo vió a Trinidad Padín con un pie puesto en el balcón de la casa y otro en la acera, llamando a su esposo; que María Lugo salió del interior de la casa al balcón con un revólver en la mano y le hizo dos disparos y luego otro más, cayendo Trinidad Padín a la acera. El testigo fué a recogerla y entonces bajó el acusado de la casa y le dijo a su esposa: "¿Te mataron? Si te mataron yo no puedo hacer nada"; que entonces trató de meter un cuchillo en la cartera de su esposa y al ver que no cabía, regresó a la casa de su amante, diciéndole: "Mira lo que traía Trinidad." Negó el testigo que la víctima dijera ninguna palabra insultante, pero que oyó decir a María Lugo: "Ya te maté, para que no me vuelvas a decir más puta."

Angel Zapata, la persona que acompañó al apelante y a su amante en el viaje a San Juan, declaró que había oído a María Lugo y al acusado discutiendo y que ella le pedía que la sacara de Mayagüez porque su esposa se pasaba insultándola; que él le contestó que para eso ella tenía el revólver que él le había comprado; que la matara y él le prestaría fianza para sacarla de la cárcel, ya que él tenía dinero; que esto se lo dijo varias veces y que dejó al apelante en casa de su esposa al regreso de San Juan; que al dejarlo, oyó cuando lo insultaba, contestándole este último que se iba de su casa porque allí no se podía vivir. También reveló el testigo que le había prestado $20 al apelante para comprar un revólver a su amante en casa de Almodóvar; que le oyó decir al acusado, dirigiéndose a María Lugo, que no le admitiera discusiones a su esposa, "que le metiera un balazo por una pata"; que al momento de los disparos no estaba presente y que el apelante no era ni amigo ni enemigo suyo pero que le había defraudado un dinero; que lo tenía denunciado antes de ser citado por el fiscal a relatar lo que

sabía; que ha declarado en anteriores ocasiones en contra del apelante pero que siempre ha dicho la verdad; que el acusado le dijo varias veces a María Lugo que se defendiera matando a Trinidad Padín; que él intervino en distintas ocasiones cuando María Lugo y el acusado. discutían, aconsejando al acusado pues éste siempre le decía a María Lugo que matara a su esposa con el revólver. Ésta fué la prueba de cargo.

El acusado declaró y aun cuando admitió el viaje a San Juan con Angel Zapata y que María Lugo vino con ellos desde San Juan a Mayagüez, negó que hubieran hablado sobre las relaciones entre María Lugo y su esposa; admitió que María Lugo era su querida desde hacía cinco años; que el día que llegaron de San Juan, él estaba bañándose en casa de María Lugo y oyó los tiros y Alfonso Flores le tocó a la puerta y él salió a la calle donde vió a su esposa tendida en la acera y al ir a recogerla, María Lugo le dijo: "Si tú te metes, te mato a tí también. La herí a ella y si tú también te metes, te mato a tí también", (transcripción de evidencia, pág. 80) y él se quedó quieto hasta que llegó el policía Magín del Toro y le quitó el revólver a ella; que él no le dijo a María Lugo que matara a su esposa ni le compró el revólver; que tenía cinco hijos y cuando bajó a la acera no llevaba nada en sus manos; admitió saber que María Lugo tenía un revólver en su casa; que Zapata manejaba el automóvil en el viaje a San Juan; que al llegar a Mayagüez fué a su casa pero su mujer le comenzó una "gresca" debido a los celos con María Lugo; que su esposa le pidió dinero para su hijo y le siguió hasta la casa de María Lugo; que después de ese día rompió sus relaciones con ella pero admitió haberle escrito varias cartas a la cárcel, después de haber muerto su esposa, en las que usaba frases como "vida mía", "querida", pues mientras estaba preso se entretenía escribiendo esas cartas; que lo hacía también para ver si le sacaba a María Lugo unos documentos de unos cerros que no le quiso dar; que no recuerda por qué le dijo en una carta que él era el único

que podía salvarla; que la considera su enemiga y la odia porque mató a su mujer; que en otra carta la llamaba "respetable y cariñosa dama"; que él trataba de buscarle trabajo o marido a María Lugo para que no viniera a la corte a calumniarle; que él le prometió a ella que sólo cumpliría tres años para impedir que ella viniera a declarar y hacerle daño; que en otra ocasión María Lugo y su esposa "se entraron a tajos" y se cortaron en Cabo Rojo y María Lugo fué condenada a un mes de cárcel, pero a pesar de eso, él siempre seguía viviendo con María Lugo.

Francisco Froylan Vega declaró que estaba escuchando un juego de pelota por radio en un colmado cuando oyó los tiros y cuando salió, vió a la señora que estaba en el balcón y vió "tan, tan . . . dos disparos a la otra", (id., pág. 132) [1] y dijo: "Eso es para que no trates a más nadie de puta y no me molestes más"; que la señora que cayó pidió agua y en eso llegó el acusado, quien salió de la casa y él le dijo que se la llevara al hospital pues estaba con vida; que entonces salió la otra al balcón y dijo: "Si vuelve a levantar la vuelvo a matar"; que la víctima no tenía nada en las manos pero sí una cartera y una sombrilla a su lado; que no le vió nada en las manos al acusado.

Alfonso Flores declaró que el día de los hechos estaba componiendo una cerca en casa de María Lugo; que por la tarde llegaron María Lugo, Angel Zapata y el acusado, quedándose la primera, pero al poco tiempo volvió el acusado y se metió en el baño y estando bañándose y él trabajando en la cerca, oyó tres disparos y al salir vió a Trinidad Padín en la calle; que le avisó al acusado, quien salió del baño y María Lugo le dijo: "No te metas. La maté a ella y te mato a tí y a tu hijo también", mientras le apuntaba con el revólver; que no vió al acusado con el revólver; que estuvo trabajando en la cerca como tres meses y le pagaba el acu-

---

[1] Si este testigo *oyó* los tiros cuando estaba en el colmado y por eso salió a la calle, ¿cómo pudo *ver* dos disparos?

sado; que no oyó lo que dijo Trinidad Padín; que él no vió hacer los disparos; que no declaró ante el fiscal.

En *rebuttal* María Lugo negó que Alfonso Flores estuviera trabajando en su casa; que cuando ella le disparó a Trinidad Padín él no estaba allí; que Flores era amigo del acusado; que éste debe ser castigado porque es el verdadero culpable de que ella se encuentre presa.

El fiscal presentó además tres cartas escritas por el acusado a María Lugo. En la última, de fecha mayo 25, 1946, diez días antes de celebrarse el juicio en este caso, entre otras cosas, le decía:

". . . Mery yo recibí cita para mi juicio el día 5 de junio, di la orden para que te citaran según me dices en una carta tuya, yo espero en ti me cumplas tu palabra de Honor ofrecida, en ayudarme, en tus manos está mi defensa, y así lo espero tú sabes que yo no me presenté como testigo tuyo pero yo quiero como madre de hijos tú sabes que yo en esto no tengo culpa. Sólo tú defendías tu derecho, como mujer, tú sabes que en nada te ofendí, y así lo espero. Ayúdame que yo te prometo que sólo cumplirás 3 años, recuerda que el fiscal te tiró a Bala roja, así es que tú cumple á hora (sic) como mujer derrótalo tú á hora (id.) . . ."

¿Fué corroborada la declaración de María Lugo en tal forma que tienda a demostrar la relación que tuvo el acusado con la comisión del delito, según exige el artículo 253 del Código de Enjuiciamiento Criminal?(²) No tenemos duda de que la pregunta debe contestarse en la afirmativa. Hemos resuelto que para determinar si existe prueba de corroboración debe eliminarse la declaración del cómplice, y· determinar, con la demás evidencia, si hay prueba inculpatoria, o sea prueba tendente a conectar al acusado con el delito. *Pueblo* v. *López*, 34 D.P.R. 260; *Pueblo* v. *Figueroa*, 46 D.P.R.

(²) Dicho artículo dispone:

"No procede la convicción por declaración de un cómplice, a no ser que ésta sea confirmada por alguna otra prueba que, por sí misma y sin la ayuda del testimonio del cómplice, tienda a demostrar la relación del acusado con la comisión del delito; no siendo suficiente dicha corroboración si sólo prueba la perpetración del delito o las circunstancias del mismo."

134; *Pueblo* v. *Márquez,* 64 D.P.R. 371; *Pueblo* v. *Muñoz,* 68 D.P.R. 171; *Pueblo* v. *Rosario,* 68 D.P.R. 566; *Pueblo* v. *Tirado,* 69 D.P.R. 389; *Pueblo* v. *Lugo,* 70 D.P.R. 145 y *Pueblo* v. *Baerga,* 70 D.P.R. 90.

Eliminada la declaración de María Lugo, tenemos que la declaración de Angel Zapata, creída por la corte, corroboró todo lo ocurrido durante el viaje de San Juan a Mayagüez, viaje admitido por el propio acusado, y en el cual éste varias veces aconsejó e instó a su amante a que matara a su esposa Trinidad Padín si ésta seguía molestándola, y ese mismo día, al "molestar" ésta a María Lugo, esta última, aconsejada y amenazada de nuevo por el acusado, mató a Trinidad Padín. Aun cuando la amenaza e incitación culminante en los disparos no fueron corroboradas, existe corroboración en cuanto a que el apelante varias veces e insistentemente le había dicho a María Lugo que matara a Trinidad Padín, que para ese fin tenía el revólver, que se defendiera, que él le prestaría fianza pues tenía dinero. Por otra parte, la declaración de Pérez Millán también tendió a conectar al acusado con el delito en relación con el incidente del cuchillo, después de los disparos hechos por María Lugo y existen, además, las admisiones hechas por el acusado en su declaración y las contradicciones en que incurrió.

Estamos ante un juicio celebrado por tribunal de derecho. La prueba de cargo le mereció crédito al juez de la corte inferior, quien oyó declarar a los testigos y pudo apreciar su conducta en la silla de los testigos y estaba en mejores condiciones que nosotros para juzgar en cuanto a su credibilidad. La prueba de corroboración fué suficiente a nuestro juicio pues relacionó al acusado con el delito. No se cometió el primer error señalado.

Tampoco el segundo y tercero, pues la prueba es suficiente para establecer el delito de asesinato en segundo grado y nada encontramos en el récord que justifique la imputación de que la corte actuó movida por pasión, prejuicio o parcialidad.

*Debe confirmarse la sentencia.*