EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR D. NEGRÓN VÉLEZ, acusado y apelante.

*Número:* CR-67-107      *Resuelto:* 28 de junio de 1968

420

422

*Benicio Sánchez Castaño* y *Gustavo A. Del Toro Bermúdez,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* abogado de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante, Víctor D. Negrón Vélez, fue acusado y convicto del delito de hurto mayor y fue sentenciado a cumplir la pena de uno a diez años de presidio.

El apelante plantea en este recurso si el testimonio de un cómplice fue corroborado de acuerdo con lo dispuesto en la Regla 156 de las de Procedimiento Criminal.[1] En otras

---

[1] Regla 156 de las de Procedimiento Criminal.

"No procederá la convicción por la sola declaración de un cómplice a no ser ésta corroborada por alguna otra prueba que por sí misma y sin tomar en consideración la declaración del cómplice, tienda a demostrar la relación del acusado con la comisión del delito. Esta corroboración no será suficiente si probare solamente la perpetración del delito o las circunstancias del mismo."

palabras, debemos determinar si la prueba aducida "sin tomar en consideración la declaración del cómplice tiende a demostrar la *relación* del acusado con la comisión del delito." (Énfasis nuestro.) Más específicamente, debemos determinar qué se entiende por "relación del acusado con la comisión del delito", y si en este caso la prueba, con exclusión del testimonio del cómplice, estableció tal "relación". Concluimos que sí. Además se cuestiona la negativa de impartir determinadas instrucciones al jurado. Concluimos que el tribunal de instancia no incidió al negarlas, excepto una. Incidió el tribunal de instancia al instruir al jurado sobre la prueba de buena reputación.

El testimonio de los testigos de cargo y de la defensa estableció los siguientes hechos, resumidos por el tribunal de instancia sin objeción de parte de la representación legal del apelante:

1.—Daniel Ruano Monteagudo testificó que se dedica a la venta de piezas usadas de automóviles; que allá para el 7 de julio de 1966 se presentó el apelante en su establecimiento a comprar piezas en una guagua Chevelle tipo "El Camino", de dos puertas, abierta atrás, azul o verde claro, tablilla 123-909, año 1964; que al testigo le gustó y con tal motivo negoció su compra por $900, cantidad que pagó al día siguiente mediante un cheque; que recibió la llave del vehículo y al día siguiente el apelante le entregó una licencia de vehículo y un contrato de venta. Estos documentos resultaron que correspondían a otro vehículo usado del mismo tipo pero chocado. Testificó que no le compró al apelante dos vehículos similares sino solo uno que no había sido chocado y que estaba en muy buenas condiciones como aparece de las fotografías del mismo admitidas en evidencia.

2.—José Iguina Cabrera testificó que es dueño de una guagua Chevelle verde aqua o azul aqua, tipo "El Camino", de 1964, que desapareció del sitio donde estaba estacionada frente a su casa, en la calle Tous Soto, cerca de la Escuela

Osuna, en el Reparto Baldrich de Hato Rey, Puerto Rico, en la noche del 30 de junio al primero de julio de 1966; que la dejó cerrada pero con una llave adicional en un cenicero; que notificó a la policía; que el 6 de agosto acompañó al sargento Arimont de la policía estatal al establecimiento de Ruano y allí identificó el vehículo que Ruano dijo haber comprado al apelante; que pudo abrirlo con la llave que llevaba; que el vehículo se operaba con la llave que él dejó en un cenicero del mismo la cual identificó; que identificó el vehículo como el suyo, además, por (a) un "guayaso" en el lado izquierdo; (b) "descascaro" del cromado del panel de instrumentos; (c) el tubo de escape corroído; (d) unas manchas en el espejo retrovisor; que le habían cambiado la tapa de atrás pues en la que tenía no aparecía incrustrado un símbolo del Colegio de Ingenieros; la tablilla era distinta; la palanca de cambios era otra, así como los tapabocinas delanteros; que las fotografías tomadas del vehículo comprado por Ruano representaban el vehículo propiedad del testigo, o sea, de Iguina; que pasaron al establecimiento del apelante con el Sr. Ruano; que el apelante le dijo que le extrañaba que el vehículo en cuestión fuese hurtado pues lo compró a un traficante de vehículos usados en Vega Baja y estaba chocada; que dicho vehículo tenía un valor de $1,200 ó $1,500 cuando se lo hurtaron.

3.—Jesús Ramón Camerón Medina, el cómplice, dijo que para el 30 de junio de 1966 hacía como seis meses que trabajaba en el taller de reparaciones del apelante en reparaciones y, entre otras cosas, en mecánica; que vio una guagua Chevelle modelo 1964 estacionada en la calle Tous Soto cerca de la Escuela Osuna, en el Reparto Baldrich; que "sobre la una de la mañana" (del 1ro. de julio de 1966) le "jaló" el cristal pequeño para abrirla por dentro pero tuvo que empujarla pues al tratar de "ponerla directa" se le quemaron los platinos; que fue al taller del apelante en un automóvil de alquiler Hertz que le había suministrado el apelante y con-

siguió que el hermano de éste y un celador fuesen con él en el automóvil alquilado a ayudarlo a remolcar la guagua que estaba hurtando hasta traerla al referido taller donde él y el referido hermano del apelante, le cambiaron la tapa de atrás debido que tenía un emblema del Colegio de Ingenieros, las tablillas y la chapita de identificación, sustituyéndolas con las de la guagua idéntica pero chocada que el apelante compró en Vega Baja y que el testigo remolcó desde allí al taller del apelante. Dijo que hurtó la guagua en cuestión porque una semana antes el apelante le había dicho que "si yo robaba una guagua Chevrolet tipo 'El Camino', de 1964, él le daba un Chevrolet 1956 a cambio"; que él llevó al apelante a ver la guagua antes de hurtarla allá para el 26 de junio de 1966 y el apelante le dijo que "era la guagua que él necesitaba"; que de regreso al taller el apelante le repitió la proposición anterior con respecto al vehículo que acababan de observar; que cuando terminó los cambios en la guagua en la noche que la hurtó, la remolcó hasta la casa del apelante donde la dejó; que al día siguiente que era domingo fue al taller del apelante y allí vio la guagua hurtada y ese día el apelante le entregó el Chevrolet prometido. En contrainterrogatorio admitió haber sido convicto de hurto mayor anteriormente pero que ese caso estaba en apelación; que por los anteriores hechos no había sido acusado; que la policía le ofreció inmunidad; no pudo explicar porque dijo que hurtó el vehículo la noche de un sábado a domingo cuando la fecha de los hechos que él indicó, 1ro. de julio de 1966, no era domingo; "que él declaró porque cuando ocuparon la guagua, el acusado [apelante] le dijo al Teniente Andino que si sacaban a Hugo y a él, el acusado [apelante], él, el acusado [apelante] iba a declarar contra el testigo; que cuando el Teniente Andino le dijo que el acusado [el apelante] lo estaba acusando de haber hurtado la guagua dice el testigo que como no lo creía pidió lo llevaran a un sitio donde no lo pudiera ver el acusado [apelante] porque quería

oir lo que decía el acusado [el apelante]; al efecto lo llevaron a un sitio donde el acusado [el apelante] no podía ver y ahí fue cuando el testigo oyó al acusado [el apelante] decirle a la policía . . . que si sacaban a Hugo y el [sic] acusado [apelante] del 'bollo', el acusado [apelante] declararía contra Camerón Medina; que fue entonces cuando él, el testigo Camerón Medina, se decidió a declarar en este caso."

La declaración jurada de este testigo ante la fiscal que representaba al Estado en este proceso, indica que se le hicieron las advertencias de ley antes de declarar; la suscribió después de ser arrestado. Interrogado el testigo sobre si le hicieron tales advertencias por la fiscal, contestó "ellos me dieron inmunidad." Dicha fiscal testificó en relación con tales advertencias que ". . . cuando el testigo prestó esa declaración por escrito ya había sido entrevistado personalmente por mí, ya teníamos instrucciones y ya le habíamos concedido inmunidad y no era necesario hacer esas advertencias de que usted habla."

4.—Wilfredo Hernández Rivera testificó que trabajaba de guardián nocturno en el taller del apelante para julio de 1966; que en una noche de ese mes se presentó Camerón en un vehículo color blanco cerca de las tres o cuatro de la mañana y le invitó a que lo ayudara a remolcar un vehículo; que él y Hugo, el hermano del apelante acompañaron a Camerón a remolcar una guagua Chevelle estacionada cerca de la Escuela Osuna hasta el referido taller donde Hugo y Camerón se quedaron arreglándola; que había visto en dicho negocio una guagua Chevelle chocada por delante días antes, la cual era idéntica a la que remolcaron; que al día siguiente ninguna de las dos guaguas estaba en el taller.

5.—Rogelio Cubano Caballero testificó que tenía un garage de reparaciones y venta de automóviles en Vega Baja; que para junio de 1966 vendió una guagua Chevelle tipo "El Camino", año 1964, color azul aqua o verde, al apelante; estaba chocada de frente; que la orden de compra y la li-

cencia del vehículo que él entregó al apelante eran las que Ruano testificó que recibió del apelante cuando éste le vendió la guagua hurtada; dijo que ésta era igual a la que el testigo vendió al apelante excepto que esta última estaba chocada.

La prueba de defensa fue la siguiente:

1.—Senador Hon. Pedro Juan Barbosa Sánchez testificó que conoce al apelante hace unos 20 años; que la reputación de éste es de ser un hombre honrado y trabajador y sus padres son personas distinguidas.

2.—Pedro Ortega, Jr., comprador de la Ibec Housing Corporation, también testificó sobre la buena reputación de honestidad intachable del apelante.

3.—Otro testigo de reputación lo fue Héctor del Castillo.

4.—Hugo Negrón Vélez dijo ser hermano del apelante; que allá para el 31 de junio de 1966 Camerón Medina fue a buscarle así como a uno llamado El Cano, pues el guardián nocturno del taller del apelante no estaba allí; éstos salieron con Camerón Medina a buscar y remolcar al taller un vehículo localizado frente a la Escuela Osuna en Baldrich; que cuando regresaron el testigo y El Cano se acostaron a dormir.

5.—El teniente de la policía Andino Rivera negó haber ofrecido inmunidad a Camerón.

6.—El secretario del tribunal de instancia testificó que de los expedientes del caso de *Pueblo de Puerto Rico* v. *Camerón* no surge que éste haya apelado el caso en que fue convicto; que el término para apelar expiró.

7.—El apelante testificó lo siguiente:

Que vendió la guagua chocada adquirida en Vega Baja al Sr. Ruano a quien le entregó el contrato de compraventa y la licencia a que éste hizo referencia y que se admitieron en evidencia como los documentos que el apelante informó a Ruano correspondían a la guagua hurtada; que también le vendió a Ruano este último vehículo el cual adquirió de Camerón; que le dijo al sargento Arimont que le había ven-

dido las dos guaguas a Ruano y no solo la que adquirió de Camerón; negó que hubiera mandado a éste a robarla.

8.—Como testigo de refutación el sargento Arimont testificó que durante la investigación en este caso, el apelante le dijo al hablar Arimont con éste del vehículo hurtado, que le había vendido un vehículo de motor a Ruano; que nunca le dijo que le había vendido más de uno.

Las instrucciones del juez sentenciador al jurado con respecto a la necesidad de prueba de corroboración del testimonio del cómplice Camerón fueron al efecto de que el testimonio del cómplice Camerón debe ser corroborado. A esos efectos el tribunal leyó al jurado el texto de la Regla 156 de las de Procedimiento Criminal. Les informó que, de acuerdo con esta Regla no procede la convicción de un ciudadano con la sola declaración de un cómplice, a menos que la declaración del cómplice quede corroborada por alguna prueba que relacione al acusado con la comisión del delito; que para determinar si la declaración de un cómplice ha sido corroborada debe descartarse totalmente la declaración del cómplice; una vez descartada totalmente la declaración del cómplice y analizada la prueba hay que determinar si la prueba existente es suficiente para relacionar al acusado con la comisión del delito; que esa prueba no tiene que ser prueba que demuestre la culpabilidad del acusado; que todo lo que se exige es que la relacione o conecte en alguna forma con la comisión del delito.

Añadió el tribunal de instancia que:

"Si ustedes llegaran a la conclusión de que la prueba ofrecida, sin tomar en consideración el testimonio del cómplice, si ustedes llegaran a la conclusión que esa prueba relaciona al acusado con la comisión del delito, entonces el testimonio del cómplice ha quedado corroborado y entonces es que el testimonio del cómplice debe ser considerado como el testimonio de cualquier otro testigo, para resolver si el acusado es inocente o culpable del delito que se le imputa."

1–2.—Apunta el apelante que el tribunal de instancia incidió al negar la absolución perentoria solicitada pues la prueba de corroboración no conecta al apelante con la comisión del delito imputado.

¿Qué se entiende por lo dispuesto en la Regla 156 de las de Procedimiento Criminal por "otra prueba que por sí misma y sin tomar en consideración la declaración del cómplice, tienda a demostrar la relación del acusado con la comisión del delito?" ¿Cuál es el alcance preciso del término "relación"?

Si bien la prueba de corroboración debe levantar algo más que una mera sospecha contra el acusado, no es necesario que vaya tan lejos como para establecer por sí misma y sin la ayuda del testimonio del cómplice, que el acusado cometió el delito que se le imputa. En repetidas ocasiones hemos sostenido que no es necesario que la prueba de corroboración sea directa, ni muy fuerte, siempre que sea suficiente para relacionar al acusado con la comisión del delito. *Pueblo* v. *Rodríguez Hernández*, 91 D.P.R. 183, 202 (1964); *Pueblo* v. *Adorno*, 81 D.P.R. 518 (1959); *Pueblo* v. *Palóu*, 80 D.P.R. 364 (1958); *Pueblo* v. *Portalatín*, 72 D.P.R. 152 (1951); *Pueblo* v. *Rosario*, 68 D.P.R. 566 (1948). La evidencia requerida para corroborar el testimonio del cómplice, no es necesaria que sea corroborante en cuanto a cada hecho testificado por él; será suficiente si no requiere interpretación profunda y la dirección de ese testimonio tiende a relacionar al acusado con la comisión del delito de tal manera que satisface al jurado de que el cómplice está diciendo la verdad; debe tender a implicar al acusado y por lo tanto debe relacionarlo con algún hecho que sea un elemento esencial del delito pero no es necesario que esa evidencia corroborativa sea suficiente por sí misma para establecer cada elemento del delito. *People* v. *Luker*, 407 P.2d 9 (Cal. 1965); *People* v. *Goldstein*, 303 P.2d 892 (Cal. 1965). Para que sea suficiente para una convicción, la prueba sobre

corroboración del testimonio de un cómplice no tiene que ser robusta ni directa, bastando tan solo que la misma tienda a relacionar al acusado con el delito imputádole, sobre todo si el testimonio del acusado se ha producido en el Tribunal e hizo ciertas admisiones. *Pueblo* v. *Segarra*, 70 D.P.R. 484 (1949).

En el caso ante nos hubo prueba de que el apelante le vendió el vehículo hurtado al testigo Ruano Monteagudo por $900; que le entregó una licencia y un contrato de venta como de tal vehículo cuando era de otro igual adquirido por el apelante de otro traficante de vehículos llamado Rogelio Cubano Caballero; que no le compró dos vehículos al apelante sino uno solo. El apelante le dijo al sargento Arimont que le había vendido a Ruano un vehículo de motor, no dos como testificó el apelante. El dueño del vehículo hurtado, José Iguina Cabrera, lo identificó como el vendido por el apelante a Ruano al cual le habían cambiado la tapa de atrás, las tablillas, y otras cosas más lo que concuerda con el testimonio del cómplice a ese efecto; testificó, además, que el apelante le dijo que le extrañaba que el vehículo en cuestión fuese hurtado pues se trataba del que el apelante adquirió de Cubano Caballero. Esto no podía ser así porque los testigos que testificaron sobre ambos vehículos estuvieron contestes en que el adquirido de Cubano Caballero estaba chocado y el hurtado no.

■ A nuestro juicio, la anterior prueba constituyó la corroboración exigida por la referida Regla 156 ya que "por sí misma" relacionó al apelante con la comisión del hurto del vehículo de motor.

Procedía, por lo tanto, declarar sin lugar la moción de absolución perentoria por falta de corroboración de la declaración del cómplice, ya que el récord contenía suficiente testimonio que de ser creído por el jurado bastaba para la corroboración. *Pueblo* v. *Tirado*, 69 D.P.R. 389 (1948). El tri-

bunal de instancia no incurrió en los primeros dos errores apuntados.

Procederemos ahora a discutir los errores basados en instrucciones al jurado.

■ La negativa a dar instrucciones específicas solicitadas por la defensa constituyen un error perjudicial que amerita la revocación de una sentencia solo si (1) la instrucción propuesta es correcta; (2) no se ha cubierto sustancialmente en las instrucciones especiales o generales; y (3) se refiere a un punto vital del caso de forma que esa negativa priva al acusado seriamente de una defensa efectiva. *Phelps v. United States*, 252 F.2d 49 (5th Cir. 1958). Con esa regla en mente pasamos ahora a examinar los apuntamientos.

3.—No incidió el tribunal de instancia al negarse a dar instrucciones específicas de cómo opera la Ley de Inmunidad de 1954 (34 L.P.R.A. secs. 1476 *et seq.*).

■ Se impugna la instrucción del tribunal de instancia al efecto de que "bajo el sistema constitucional en que vivimos una persona a quien se le imputa la comisión de un delito no se le puede obligar a declarar en contra de sí mismo. Es un derecho constitucional que se le concede a toda persona bajo investigación de la comisión de un delito público. Ahora bien, la ley concede ciertas facultades a ciertos funcionarios públicos como son los fiscales de El Pueblo de Puerto Rico para que si ellos así lo entendieren necesario ofrecerle inmunidad a una persona para que sirva de testigo en un proceso criminal", porque la referida Ley de Inmunidad no opera en forma automática y que debió instruirse al jurado sobre las motivaciones que tuvo el fiscal para ofrecer la inmunidad. No tiene razón.

Sostuvimos en *Suárez Sánchez v. Tribunal Superior*, 92 D.P.R. 507, 516 (1965), escolio 4, que ". . . si viniéramos obligados a determinar la validez constitucional de esa ley a base del argumento esbozado por el peticionario, no podría-

mos llegar a otra conclusión que no fuera la de que el estatuto no concede inmunidad automática." Sin embargo, ni la ley ni la interpretación dada en *Suárez*, supra, impiden que el ministerio fiscal conceda inmunidad a un testigo a quien necesita. Nos explicamos. El Estado puede ofrecerle a un criminal la inmunidad en determinado proceso, a cambio de que éste honestamente ofrezca una declaración completa de las circunstancias del delito, en el procesamiento de un cómplice, sea éste o no convicto. Ley de Inmunidad de 1954, 34 L.P.R.A. secs. 1476 *et seq.* Bajo la ley anterior, Ley Núm. 13 de 9 de abril de 1941, 34 L.P.R.A. sec. 1468, la inmunidad de un criminal que ofrecía su testimonio contra su compañero era de carácter automático. *Batalla* v. *Tribunal de Distrito*, 74 D.P.R. 289 (1953). De manera que si luego de una persona ofrecer su testimonio en un proceso contra su compañero, dicha persona fuera procesada por haberse incriminado en su testimonio, podría levantar con éxito por vía de defensa, su derecho a la inmunidad e impediría el proceso. La ley actual no contiene disposición alguna que prive al Estado de conceder inmunidad bajo las circunstancias en que se hizo en este caso.

4.—Se apunta que el tribunal de instancia incidió al negarse a impartir instrucciones sobre las contradicciones en que incurrió en su testimonio el cómplice Camerón.

En el resumen del testimonio de dicho testigo el tribunal de instancia puntualiza las referidas contradicciones. Luego indicó que una de las formas de impugnar la veracidad de un testigo es probando que ha sido convicto de la comisión de un delito grave; que Camerón había sido convicto de un delito grave pero que esto no quiere decir que su testimonio tiene que ser descartado; que "Queda siempre en consideración de ustedes como jurado de los hechos determinar el grado de veracidad que pueda merecerle ese testigo a pesar de haber sido convicto anteriormente por un delito grave."

■ El apelante no objetó dicha instrucción ni solicitó instrucciones sobre las contradicciones en que incurrió Camerón en el curso de su testimonio. Tampoco solicitó aclaración de clase alguna. Es regla reiterada por este Tribunal que errores en las instrucciones que no afecten derechos sustanciales del acusado quedan renunciados al no objetar la defensa dichas instrucciones. *Pueblo* v. *Iturrino de Jesús*, 90 D.P.R. 706 (1964); *Pueblo* v. *Pimentel Camacho*, 89 D.P.R. 135 (1963); *Pueblo* v. *Pacheco*, 83 D.P.R. 526, 532 (1961).

■ 5.—Se arguye que el tribunal de instancia incidió al negar la instrucción solicitada por la defensa al efecto de que "La mera posesión de objetos robados o hurtados es más bien prueba circunstancial del hecho en relación con otra prueba demostrativa de los elementos del delito pero que por sí sola no tiene valor alguno en cuanto se refiere a la culpabilidad del acusado. La mera posesión explicada no es suficiente para sostener una convicción contra el acusado."

La instrucción impartida cubre sustancialmente el punto sobre la posesión de propiedad hurtada, la necesidad de explicarla y que es insuficiente por sí sola para justificar la convicción del acusado.

■ Se arguye, además, que el tribunal debió incluir en esta instrucción la explicación que dio el apelante de como fue que advino dueño del vehículo hurtado. Este planteamiento no se hizo ante el tribunal de instancia. Es tardío. Además, resulta insustancial pues el juez sentenciador hizo referencia a esta cuestión en su resumen del testimonio del apelante. La cuestión fue sometida al jurado como dijimos en *Pueblo* v. *Nieves Alvelo*, 89 D.P.R. 47 (1963).

Concluimos, por lo tanto, que el tribunal de instancia no incurrió en el referido error.

6.—El tribunal de instancia no incidió al negar una instrucción solicitada basada en el hecho de que el ministerio

público no presentó en evidencia el cheque con el que Ruano pagó al apelante por el vehículo hurtado. La instrucción solicitada era al efecto de que debía presumirse que tal evidencia resultaba adversa al caso del ministerio público.

El apelante admitió haber vendido a Ruano el vehículo hurtado por $900 y que recibió un cheque de éste por esa cantidad en pago de dicho precio. Por lo tanto, convenimos con el Procurador General que:

". . . el detalle nimio en cuanto a si el Ministerio Público no produjo en evidencia un cheque objeto de la transacción con el testigo Ruano no tiene relevancia alguna sobre la culpabilidad o inocencia del apelante. Los elementos de prueba de dicha transacción aportados tanto por el testigo Ruano como por el propio apelante son absolutamente claros en cuanto a relacionar al apelante con la guagua hurtada. Además, el conjunto de la prueba sobre la evidente relación del apelante con el hurto perpetrado por el cómplice Camerón, no dejan lugar a dudas sobre lo insustancial y vago del presente error."

7.—Se imputa la violación del debido procedimiento de ley al recurrir la policía, por medio de tretas, engaños y medios ilegales a obtener la declaración de un cómplice a quien dieron inmunidad para que declarara en contra del apelante. Este apuntamiento es inmeritorio.

Sostiene el apelante en apoyo de este planteamiento que el cómplice fue llevado al Cuartel General de la Policía porque le habían informado que el apelante le había dicho al teniente Andino que si sacaba al apelante y a su hermano del problema él declaraba en contra del cómplice; que lo llevaron al Cuartel General y lo pusieron en un cuarto donde el apelante no podía verlo, pero él si podía verlo y oírlo (al apelante); que oyó y vio al apelante decir al teniente Andino que si lo sacaban a él y al hermanito de él del "lío" el apelante declararía en contra del cómplice, entonces él (el cómplice) acusó al apelante.

Sostiene, además, que para conseguir una declaración que incrimine a un tercero, la policía en este caso se

valió de medios ilegales y violó todos los derechos constitucionales del apelante así como los del cómplice, pero que como al cómplice se le dio inmunidad no le afecta tanto pero sí tiene importancia en cuanto al apelante porque está sufriendo las consecuencias de las "tácticas engañosas de la policía."

Estamos de acuerdo en que todo tipo de coacción física o síquica usado para obtener, ya sea la confesión de un sospechoso, o la declaración de un testigo incriminando a otro es ilegal y por lo tanto inadmisible. *Miranda* v. *Arizona*, 384 U.S. 436, 446 (1966); cf. *People* v. *Portelli*, 205 N.E.2d 857 (N.Y. 1965). Sin embargo, no creemos que los hechos de este caso sean suficientes para concluir que hubo coacción de clase alguna. Lo único que surge de la transcripción es que el cómplice fue llevado al cuartel de la policía y fue colocado en un cuarto desde donde veía y oía al apelante decir que si lo sacaban a él y a su hermanito, él (el apelante) serviría de testigo en contra del cómplice. Eso no fue rebatido ni se trató siquiera de probar que fue una trampa de la policía, ni de que el que habló no fuera el apelante. Quedó en evidencia que fue el apelante quien primeramente se ofreció a declarar contra el cómplice si se le ofrecía a él y a su hermano "sacarlos del problema."

Los argumentos que aduce el apelante en su alegato de que "no sabemos y no surge del récord, es cuántas veces anteriores a ese día en que fue llevado al cuartel general había sido el cómplice interrogado por la policía", son meras conjeturas sin base alguna en la prueba. Nunca se ha pretendido sostener que el interrogatorio de testigos sea ilegal. La realidad es que esos interrogatorios son indudablemente herramienta esencial en la función de hacer cumplir la ley. *Haynes* v. *Washington*, 373 U.S. 503, 515 (1963).

8.—Apunta el apelante que no debió admitirse el testimonio del sargento Arimont al efecto de que el apelante le dijo que solo había vendido un vehículo de motor a Ruano

pues no se comprobó que antes de hacer esa declaración se le hicieron al apelante las advertencias completas sobre sus derechos constitucionales; que el tribunal de instancia abusó de su discreción al permitir a dicho oficial testificar.

■ La declaración en cuestión fue dada al sargento Arimont por el apelante en el negocio de éste, en el curso de la investigación del hurto en cuestión. El apelante no había sido arrestado ni estaba bajo custodia en ese momento. El agente policiaco fue al negocio del apelante meramente a investigar sobre la procedencia de un vehículo que Ruano indicó le había sido vendido por el apelante. La prueba no demuestra que para entonces la investigación había tomado el cariz de acusatoria y se posaba sobre el apelante como el sospechoso en particular. *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765, 779 (1965). Por lo tanto, no era necesario hacerle al apelante advertencia alguna con anterioridad a interrogarle en el curso de la investigación que se realizaba. *Mares* v. *United States*, 383 F.2d 811 (10th Cir. 1967).

En vista de la anterior circunstancia era admisible el testimonio del sargento Arimont como testigo de refutación pues fue el apelante en su testimonio directo quien hizo referencia a que él le había dicho al referido sargento que le había vendido dos vehículos a Ruano. Como la credibilidad del apelante era materia relevante, el fiscal podía impugnarla, como lo hizo, trayendo como prueba de refutación el testimonio del sargento al efecto de que el apelante le dijo que sólo había vendido un vehículo a Ruano. *State* v. *Collins*, 150 N.W.2d 850, 859 (Minn. 1967).

9.—Aduce el apelante que el tribunal de instancia al hacer referencia al testimonio de un cómplice convicto de delito grave y cuya credibilidad fue impugnada en relación con elementos esenciales y vitales del caso debió instruir al jurado que ese testimonio "debe estar sujeto por ustedes

a un examen escudriñado, minucioso y medido con gran cautela, cautela quiere decir, precaber [*sic*] exhortar y/o notificar peligro." No tiene razón.

En apoyo de este apuntamiento cita el apelante los casos de *Brickey* v. *United States*, 123 F.2d 341 (8th Cir. 1941); *Arnold* v. *United States*, 94 F.2d 499 (10th Cir. 1938); *Outlaw* v. *United States*, 81 F.2d 805 (5th Cir. 1936).

También arguye que tal es la norma prevaleciente en California bajo una disposición similar a nuestra Regla Núm. 156 de Procedimiento Criminal. *People* v. *Dail*, 111 P.2d 723 (Cal. App. 1941).

Los casos citados no tienen aplicación. Bajo las Reglas de Procedimiento Criminal federal no es necesario corroborar el testimonio de un cómplice. Pero en *Brickey*, *Arnold* y *Outlaw*, supra, se dijo que el tribunal debe advertir al jurado que debe pesar el testimonio del cómplice con cuidado; que dicho testimonio debe someterse a un examen minucioso y considerarse con gran cuidado y cautela, pero puede dar base a una convicción aunque no esté corroborado. En California no tan sólo el Código Penal (Art. 1111) exige la corroboración del testimonio de un cómplice sino que, además, el juez debe instruir al jurado que dicho testimonio debe ser considerado con desconfianza (West's *Annotated California Code, Civil Procedure*, § 2061). En jurisdicciones donde solo se exige la corroboración del testimonio del cómplice basta con que se instruya al jurado sobre ese requisito de corroboración. *Bennett* v. *State*, 144 S.W.2d 476, 480 (Ark. 1940).

Por último, en *Pueblo* v. *Serrano Olivo*, 93 D.P.R. 745 (1966), dijimos que la omisión de transmitir la instrucción sobre cautela (referente al testimonio de la perjudicada en un caso de un delito sexual no cubierto por la Regla 154 de las de Procedimiento Criminal que requiere la corroboración de la declaración de la mujer agraviada) no constituye error que dé margen a la revocación "cuando el testimonio de la

parte perjudicada ha sido corroborado por prueba directa o circunstancial, o cuando en la apreciación del tribunal de apelación, el resultado no hubiese sido distinto debido a que la prueba es convincente, está huérfana de contradicciones sustanciales y no es inherentemente improbable."

10.—Apunta el apelante que el juez sentenciador incidió al instruir al jurado con respecto a la prueba de reputación.

Puede presentarse prueba de reputación para demostrar que era improbable que el acusado hubiese cometido el delito del cual se le acusa. Esta prueba considerada con la otra evidencia en el caso puede crear una duda razonable. Bajo ciertas circunstancias dicho testimonio de por sí puede levantar duda razonable con respecto a la culpabilidad del acusado. *Michelson* v. *United States,* 335 U.S. 469 (1948); *Edgington* v. *United States,* 164 U.S. 361 (1896). Sin embargo, esta última norma está solo reconocida en los tribunales federales de circuitos de apelación Núms. 7 y 10 habiendo sido rechazada por los tribunales de circuito Núms. 2, 3, 4, 5, 6, 8 y 9. *People* v. *Drwal,* 188 N.E.2d 688, 691 (Ill. 1963). La explicación nos la da el Juez Learned Hand en *Nash* v. *United States,* 54 F.2d 1006 (2d Cir. 1932), en el cual dictaminó lo siguiente:

"Se cuestiona bajo la norma establecida en *Edgington* v. *U.S.,* 164 U.S. 361 . . . la instrucción del juez al efecto de que el jurado debe considerar el testimonio de reputación junto con el resto de la prueba, recordando que una persona no obstante su buena reputación puede cometer un delito . . . . El dictamen de ese caso [el de *Edgington,* supra], no fue más allá de establecer que *el juez no debe limitar el uso de tal testimonio* [el de reputación] *a la ocasión en que ya haya surgido duda en la mente del jurado.*" (Énfasis nuestro.)

Cuando se introduce prueba de reputación el acusado tiene derecho a que se instruya al jurado (1) que el propósito de esa prueba es crear duda razonable; (2) que dicha prueba debe ser considerada independientemente de

que el efecto de la otra prueba con respecto al caso sea claro o dudoso; (3) que cuando dicha prueba es considerada conjuntamente con el resto de la prueba, si surge una duda razonable sobre la culpabilidad del acusado, éste tiene derecho a ser absuelto. *Salinger* v. *United States*, 23 F.2d 48, 53 (8th Cir. 1927).

Se ha resuelto que cuando la prueba ha establecido con toda claridad la culpabilidad del acusado, y la instrucción impugnada constituye una pequeña parte de un extenso pliego de instrucciones y la prueba de reputación es escasa, limitada al testimonio de tres negociantes asociados del apelante al efecto de que su reputación es buena con respecto a honradez, veracidad, y en relación con la realización de negocios justos, el hecho de que la instrucción sobre reputación es errónea en cierto aspecto no constituye un perjuicio sustancial de los derechos del acusado que requiera el revocar su convicción. *United States* v. *Kushner*, 135 F.2d 668 (2d Cir. 1943). En *Kushner*, supra, la instrucción fue al efecto de que "cuando la evidencia está balanceada en las mentes del jurado, la prueba de buena reputación puede ser determinante." Se apuntó que el tribunal debió haber instruido al jurado que el testimonio sobre reputación "de por sí puede crear duda razonable en vuestras mentes." Aunque el tribunal concluyó que la instrucción solicitada estaba apoyada por *Edgington*, supra, el juez no estaba obligado a adoptar las palabras precisas escogidas por la representación legal del apelante; que si el juez se hubiera limitado a dejar el peso y efecto del testimonio de reputación en el jurado, esto hubiera sido una relación suficiente de la ley aplicable. Añadió el tribunal que la instrucción impartida conllevaba una connotación negativa contraria a *Edgington*, supra, por lo que tal instrucción no debió darse pero este error no causó perjuicio sustancial. En *United States* v. *Minieri*, 303 F.2d 550, 555 (2d Cir. 1962), se concluyó que una instrucción al efecto de que el testimonio de reputación "puede hacer más difícil

la obligación del gobierno de probar la culpabilidad más allá de duda razonable que en el caso de que tal prueba no se hubiera ofrecido", aunque no se ajustaba a la norma establecida en *Edgington,* supra, y *Michelson,* supra, dicha instrucción aunque no todo lo clara que debió ser, era suficientemente explicativa del efecto de la prueba de reputación sobre el peso de la prueba que recae sobre el ministerio público de manera que en vista de la robusta prueba en contra de Minieri, el defecto en la instrucción no era tan obvio ni tan perjudicial que obligaba a excusar el no haberla objetado cuando se impartió. En *United States* v. *Haskell,* 327 F.2d 281, 286 (2d Cir. 1964), la instrucción objetada fue: "En relación con una cuestión dudosa, la buena reputación por sí sola puede ser suficiente para levantar una duda razonable en cuanto a la culpabilidad del acusado." Se concluyó que aunque la frase "En relación con una cuestión dudosa" es demasiado restrictiva en vista de lo resuelto en *Edgington,* supra, y *Michelson,* supra, cualquier error debido a su inclusión era insustancial bajo las circunstancias de este caso. Véase, *Moore* v. *United States,* 254 F.2d 213, 221 (5th Cir. 1958).

■ En el caso ante nos el apelante solicitó se impartieran al jurado instrucciones en relación con la prueba de reputación al efecto de que debe ser considerada (1) para probar que es improbable que él cometió el delito; (2) para determinar, junto con el resto de la prueba, si una persona de buena reputación es capaz de cometer el delito imputado; (3) en vista de que se ha impugnado la credibilidad de un testigo de cargo; (4) para que de no darle crédito al testimonio del cómplice y tomando en consideración la prueba presentada incluyendo la de buena reputación, el jurado deba absolver al acusado.

El tribunal de instancia, en lugar de las referidas instrucciones, impartió al jurado la siguiente:

"Señores del Jurado, durante este proceso se sentaron a declarar varios testigos sobre la buena reputación de este acusado. Esa evidencia, la evidencia de la buena reputación sería en todos los casos por sí sola insuficiente para exonerar de culpabilidad a una persona que hubiera cometido algún delito. Ustedes, señores del jurado, no pueden considerarla separadamente. Tienen el deber de relacionarla con el resto de la evidencia, considerándola juntamente con toda la prueba practicada durante el juicio. Si de esa consideración se desprende a juicio de ustedes, la culpabilidad del acusado no pueden absolver al acusado únicamente fundándose en la buena reputación del mismo. Esta, la prueba de buena reputación puede servir por ejemplo *para fortalecer una duda razonable* sobre la culpabilidad o inocencia del acusado pero nunca considerada aisladamente sino en armonía con el resto de la evidencia admitida por el Tribunal." (Énfasis nuestro.)

De dicha instrucción resulta claramente errónea la manifestación de que "la prueba de buena reputación puede servir de ejemplo para fortalecer una duda razonable sobre la culpabilidad o inocencia del acusado pero nunca considerada aisladamente sino en armonía con el resto de la evidencia admitida por el tribunal." Esto necesariamente le resta gran valor a la prueba de reputación pues su consideración en el caso de que ya hubiere surgido duda razonable resulta en realidad innecesaria ya que al surgir tal duda el jurado debe proceder a absolver. Este es precisamente el tipo de instrucción errónea que en *Edgington* supra, dio lugar a la revocación de la sentencia en ese caso, según lo entendió el Juez Learned Hand en *Nash*, supra.

Es cierto que la prueba de culpabilidad fue amplia y convincente y que la prueba de reputación fue tan escasa como en *Kushner*, supra, pero el referido error en la instrucción en este caso fue sustancial y por lo tanto perjudicial a los intereses del apelante. Además, esencial era que el juez instruyera al jurado que (1) tal prueba, considerada conjuntamente con el resto de la evidencia presentada puede crear una duda razonable; (2) que se presenta

con el propósito de crear duda razonable, como por ejemplo, que era improbable que el acusado hubiese cometido el delito que se le imputa; y (3) que dicha prueba puede ser considerada independientemente de que el efecto del resto de la prueba admitida sea claro o dudoso.

*Por lo tanto, se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de San Juan, en 3 de marzo de 1967, y se devolverá el caso para la celebración de nuevo juicio.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Hernández Matos no intervinieron. El Juez Asociado Señor Blanco Lugo disintió.