# 96 DTA 88

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO DE CAROLINA Y FAJARDO

EL PUEBLO DE PUERTO RICO
Recurrente

v.

JOAN SANCHEZ HERNANDEZ
Recurrido

Núm. KLCE-95-00105

San Juan, Puerto Rico, a 14 de febrero de 1996

Panel integrado por su presidenta, Juez López Vilanova
la Juez Fiol Matta y el Juez Martínez Torres

Fiol Matta, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Ministerio Fiscal nos solicita la revisión de una resolución del Tribunal de Primera Instancia, Sala de Carolina, emitida en corte abierta el 13 de febrero de 1995. ■ La misma declaró la procedencia de una moción de supresión de evidencia presentada por el acusado. ■

El 16 de marzo de 1995, ordenamos la paralización de los procedimientos en el foro de instancia solicitada por el recurrente en su Moción en Auxilio de Jurisdicción. Asimismo le ordenamos al recurrido mostrar causa por la cual no debíamos expedir el recurso y dictar sentencia revocando la resolución recurrida. El 26 de abril de 1995, luego de concedérsele varias prórrogas al plazo originalmente concedido, el recurrido sometió su escrito en cumplimiento de nuestra orden para mostrar causa. El Procurador General replicó al mismo sometiendo su escrito el 8 de mayo de 1995. Analizados los planteamientos de las partes y a los fines de la más correcta y justa dilucidación del caso, ordenamos al Tribunal de Primera Instancia, Sala de Carolina, preparar y someter una transcripción de dicha vista dentro de un plazo de 30 días. ■ Habiendo examinado la transcripción, así como los autos del caso y el derecho aplicable, revocamos la resolución recurrida.

### I

De la declaración jurada suscrita por el policía uniformado Pedro J. Rivera Esquilín y de su testimonio en la vista de supresión de evidencia surgen los hechos que dieron lugar al arresto del recurrido y a su acusación por violaciones a la Ley de Sustancias Controladas. El policía Rivera Esquilín relató que el 14 de septiembre de 1994, temprano en la tarde y en compañía de otro compañero diligenció una orden de arresto expedida contra Irwin Borrero Ayala, *"el Gringo"*. La orden de arresto contra Borrero Ayala fue expedida por los delitos de asesinato e infracciones a la Ley de Armas. Declaró que al momento de arrestarlo se le ocupó al señor Borrero un mensáfono o buscapersonas *("beeper"),* ■ el cual "minutos más tarde" comenzó a sonar y recibió el siguiente mensaje: *"Favor de llamar a Joan"* al teléfono 276-8953. A preguntas de la jueza que presidió la vista de supresión, explicó que decidió contestar la llamada porque la persona arrestada a quien le ocupó el mensáfono estaba relacionada con un punto de drogas. En su declaración jurada relató que llamó al teléfono 276-8953 y Joan contestó la llamada. Explicó que le hizo creer a Joan que quien le hablaba era el *"Gringo",* según el declarante, Joan le dijo que *"ya tenía el material y que tenía que recogerlo en la "Carretera 860, Intersección Calle 1 en Metrópolis, frente a unas piedras".* Señaló que le describió a Joan el vehículo de motor en el que llegaría al lugar para recoger el material como un *"Mazda negro, tinteado":*

"Me dirigí al lugar que Joan me había indicado y cuando llego, y él ve el carro, se va acercando y yo noto que tiene en la mano izquierda una bolsa plástica transparente. Cuando abro la puerta del carro y él nota que es un policía debidamente uniformado, deja caer la bolsa al piso y se queda quieto. Procedí a ocupar la evidencia, cuatro bolsas plásticas transparentes, con supuesta picadura de marihuana en su interior . ■

A Joan Sánchez Hernández se le imputó infracción al Artículo 401 de la Ley de Sustancias Controladas, 24 L.P.R.A. 2401. Luego de una determinación judicial de causa para su arresto y de una vista preliminar en la que se encontró también causa para su acusación, se señaló la vista en su fondo para el 13 de febrero de 1995. El 3 de febrero de 1995, diez días antes de la vista en su fondo, el representante legal del acusado presentó una moción de supresión de evidencia en la que alegó que la prueba del Ministerio Fiscal fue producto de una intervención y registro ilegal, en contravención con los derechos garantizados por la Sec. 10, Art. II, de la Constitución del Estado Libre Asociado. ■ Adujo que la ilegalidad del registro sin orden surgía del propio testimonio del agente del estado que intervino en su caso, el cual calificó como estereotipado. El 8 de febrero de 1995, presentó moción enmendada en la que incluyó como fundamento adicional que la evidencia fue producto de una actuación inconstitucional del Estado a través del policía Rivera Esquilín quien interceptó el mensaje que alegadamente envió al mensáfono de Irwin Borrero Ayala y mediante engaño, haciéndose pasar por este último, lo llamó acordando *"una supuesta transacción ilegal".* ■ Asimismo reclamó que de la declaración jurada del policía y de su testimonio en la vista preliminar no surgía que la conversación alegadamente sostenida entre el acusado y el policía brindara motivo fundado alguno para que éste último creyera que se estaba configurando un delito.

El 13 de febrero de 1995 se celebró una vista de supresión de evidencia. El Ministerio Fiscal estipuló los hechos alegados en la moción de supresión de evidencia, ya que éstos surgían de la declaración jurada del policía y del testimonio que virtió en la vista preliminar. Luego de examinar la prueba estipulada y de escuchar los argumentos de la defensa en apoyo de su moción, la jueza que presidió la vista determinó que no existía testimonio estereotipado en la declaración del policía, puesto que hoy día las transacciones de drogas no *"buscan la oscuridad de la noche.... Ahora las drogas se venden... como si estuviéramos vendiendo dulces, como si fueran algo tan y tan aceptado...".* ■ En cuanto a la alegada actuación ilegal en la interceptación del mensaje, concluyó que no existe respecto a un mensáfono la misma expectativa de intimidad que respecto a un teléfono porque "es conocido que ese es un instrumento que es accesible a cualquier persona y que dejado en lugar que fuera, intencional o no intencionalmente, la persona que lo tenga, como el mensaje queda grabado, queda a disposición del que tenga el *"beeper"* en sus manos. Por lo tanto, ciertamente que *"no estamos hablando aquí tampoco de un instrumento de comúnicación como lo es el teléfono...".* ■ concluyó, además, que la ocupación por el policía Rivera Esquilín del mensáfono fue válida por ser el producto de un arresto legal. ■ No obstante, expresó que le preocupaban las razones o motivos que tuvo el policía Rivera Esquilín para originar la llamada, por lo que permitió que preguntas de la jueza, el policía Rivera Esquilín explicó que devolvió la llamada *"[p]orque nosotros teníamos confidencia que "el Gringo" estaba traficando, estaba bregando con puntos de droga.*■ La defensa lo contrainterrogó y el tribunal procedió a dictar en corte abierta la resolución impugnada, ordenando la supresión de la evidencia por falta de motivos fundados. ■

## II

En su recurso de *certiorari*, el Ministerio Público señala que la jueza de instancia erró al *"resolver que la Policía de Puerto Rico no puede contestar una llamada a un "beeper' y concertar una transacción de drogas con la persona* que origina la llamada pues no tenía motivos fundados para realizar dicha gestión investigativa. *"[Por lo] [q]ue la ocupación del material delictivo en el imputado [fue] fruto del árbol prohibido".* Arguye que "[l]a gestión del Policía Rivera de contestar la llamada al "beeper" y hacerse pasar por *"el Gringo" no viola derecho constitucional alguno pues se encontraba realizando una gestión válida de sus derechos en la persecución del crimen".* ■ Indica que es de común conocimiento la utilización de la palabra "material" en la venta de narcóticos y plantea que la intervención del policía con el acusado sólo hubiera sido ilegal si lo hubiera arrestado tan pronto llegó al sitio de la entrega, por razón del contenido de la conversación telefónica. Por el contrario, la intervención con el acusado *"sólo se concreta cuando a simple vista ve el material delictivo de las bolsas de marihuana que el imputado arrojó al suelo"* ■ El Ministerio Público señala que la jurisprudencia federal no reconoce una razonable expectativa de privacidad en los mensajes que se

envían a un mensáfono, como tampoco la hay en los mensajes que se dejan en una máquina contestadora de teléfono. *United States v. Meriwether*, 917 F.2d 955 (1990); *United States v. Whitten*, 706 F.2d 1000 (1983), rev. denegado en 465 U.S. 1100 (1984). Explica que en el caso de autos no aplica la disposición constitucional que prohibe la interceptación telefónica, porque se trata del uso de un mecanismo de comunicación en que intervienen distintas personas entre el que origina el mensaje y el que lo recibe.

Por último, plantea que:

*"[u]na persona no tiene expectativa de intimidad alguna sobre el contenido de un mensaje que envia por el sistema de comunicaciones de un "beepe".... es válida la gestión de las autoridades en contestar dichas llamadas y facilitar la identificación y arresto de personas envueltas en el trasiego de narcóticos... la actuación del Policía Rivera se limitó a facilitar la identificación y arresto de un distribuidor de drogas. El arresto del aquí imputado se produjo al éste lanzar el material delictivo cuando ya se había cometido un delito en la presencia del Policía Rivera."* ■

En su escrito mostrando causa, el recurrido no cuestiona la determinación del tribunal de instancia respecto a la ausencia de expectativa razonable a la intimidad del mensaje que envió al mensáfono de la persona arrestada. No obstante, es necesario, para resolver los planteamientos del Ministerio Público, que examinemos si en efecto cobijaba al recurrido alguna expectativa de intimidad en este caso.

La protección constitucional contra registros y allanamientos irrazonables tiene base tanto en la Constitución de los Estados Unidos como en la del Estado Libre Asociado de Puerto Rico. Sin embargo, la nuestra contiene unas garantías más amplias, goza de una vitalidad independiente y su interpretación no ha sido, ni tiene necesariamente que ser, históricamente paralela en todo sentido con la de la Cuarta Enmienda de la Constitución Federal. Véase *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979) y *Pueblo v. Dolce*, 105 D.P.R. 422 (1975). ■ La Sección 10 de la Carta de Derechos de la Constitución del E.L.A está orientada a proteger a la persona, sus pertenencias y la intimidad del hogar frente a cualquier actuación irrazonable por parte del Estado. *Pueblo en Interés del Menor N.R.O.*, ___ D.P.R. ___ (1994), **94 J.T.S. 118.** Los valores centrales que interesa proteger son la intimidad del ser humano y su dignidad innata. *Pueblo v. Muñoz Santiago.* ___ D.P.R. ___ (1992), **92 J.T.S. 149**, pág. 10084. Además, la garantía contra registros y allanamientos irrazonables protege los documentos y pertenencias del ciudadano e interpone la figura del juez entre los funcionarios del Estado y la ciudadanía, para ofrecer mayor garantía de razonabilidad en la intrusión. Véase *Pueblo v. Conde Pratts*, 115 D.P.R. 307, 318 (1984) (Opinión concurrente del Juez Trías Monge) y *Pueblo v. Dolce, supra.*

Debemos destacar que *"[a]l igual que en el caso del arresto, la razonabilidad de la intervención será la piedra angular de su validez constitucional".* ■ En efecto, se estima que ha ocurrido un registro que traspasa el límite constitucional cuando se infringe la expectativa de intimidad, más allá de lo que la sociedad acepta como razonable para proteger otros valores e intereses. Véase *United States v. Padín*, 787 F.2d 1071, 1075, cert den 479 U.S. 823, 1075 Ct. 983, 983 L.Ed. 2d 45 (1986). Así, pues, inicialmente hay que determinar si la persona que reclama la violación tiene un derecho razonable a abrigar, donde sea, y dentro de las circunstancias del caso específico, una expectativa de que se respete su intimidad. *Pueblo en Interés del Menor N.R.O., supra,* página 146.

Entendemos que la disposición constitucional que expresamente prohibe la interceptación de la comúnicación telefónica no aplica al mensaje enviado en este caso, pues contrario a lo que sucede con una comúnicación telefónica, una persona no puede albergar una expectativa razonable de privacidad sobre aquellos mensajes que ha enviado a otra a través de terceras personas y sobre los cuales no tiene garantía alguna, ni forma de asegurarse, de que únicamente lo va a recibir la persona a quien lo dirige. *Smith v. Maryland*, 442 U.S. 735 (1979). así se ha resuelto expresamente en la jurisdicción federal. En *United States v. Meriwether, supra*, la controversia giró en torno a la expectativa de privacidad en el contenido de un mensaje que envió el acusado-apelante a un *"pager"* ■ que se encontraba válidamente en manos de los agentes del Estado por pertenecer a una persona que fue objeto de una orden de registro. En dicho caso, el tribunal determinó que no existe una expectativa de confidencialidad respecto a los mensajes enviados por mensáfono y que los tribunales no deben

proteger la confianza ingenua ("misplaced trust"), de una parte de que el mensaje así enviado llegaría tan sólo a la persona indicada. Véase también *U.S. v. Lynch,* No. 95-73, 1995 *U.S. Dist. Lexis* 18308, (District Court, U.S. Virgin Islands, D. St. Thomas, 1 de diciembre de 1995), a publicarse en 908 F. Supp. 284 (1995).

Como corolario fundamental a la protección que debe brindarse a la expectativa de intimidad, la jurisprudencia ha creado una presunción de invalidez cuando los registros y allanamientos se llevan a cabo sin orden judicial previa. Por eso, ordena que sea inadmisible, en un proceso criminal contra el sujeto del registro y allanamiento, toda evidencia ocupada sin orden judicial, a menos que se consienta al registro, directa o indirectamente, o que circunstancias de emergencia requieran lo contrario y el peso de los intereses en conflicto exija una solución distinta. Véase *Pueblo v. Ríos Colón,* \_\_\_ D.P.R. \_\_\_ (1991), **91 J.T.S. 66**, página 8824 y *E.L.A. v. Coca Cola Bott. Co.,* 115 D.P.R. 197 (1984). Resultado de lo anterior es la obligación del Ministerio Público de rebatir dicha presunción mediante la presentación de prueba sobre la existencia de circunstancias especiales o apremiantes que requirieron la intervención sin orden judicial. *Pueblo v. Lebrón, supra.* Una de dichas excepciones, que son limitadas y específicas, ▮ es el registro incidental a un arresto válido. ▮ En tales casos se ha determinado que es razonable el registro sin orden de la persona del arrestado y del área que está a su alcance inmediato, para ocupar armas que puedan ser empuñadas y utilizadas por el arrestado para agredir a los agentes del orden público o para intentar una fuga y para ocupar evidencia que de otro modo el arrestado podría destruir. *Pueblo v. Costoso Caballero,* 100 D.P.R. 147 (1971).

En el caso de autos, el mensáfono *("beeper")* que poseía la persona objeto de la orden de arresto fue legalmente incautado por el policía Rivera Esquilín, bajo la excepción del registro incidental a un arresto válido. Habiéndose determinado que el recurrido no tenía una expectativa razonable de intimidad respecto al mensaje enviado por *"beeper"* sólo nos resta examinar si bajo los hechos y circunstancias específicas y particulares del mismo, se exigía que el agente del Estado tuviese motivos fundados para iniciar una investigación utilizando el mensaje recibido en el mensáfono. Resolvemos que no, según explicamos a continuación.

Hemos señalado que el policía Rivera Esquilín declaró que tenía conocimiento de que la persona contra quien se había expedido la orden de arresto se relacionaba con el negocio de drogas. Es bien sabido que los "beepers" o mensáfonos, así como otros artefactos electrónicos como los teléfonos celulares, se utilizan extensamente en dicha empresa criminal. Frente al mensaje recibido en el mensáfono, el policía Rivera Esquilín decidió iniciar una investigación dirigida a descubrir actividad delictiva. Al así hacerlo, actuó dentro de sus funciones, que incluyen la de *"prevenir, descubrir y perseguir el delito".* 25 L.P.R.A. sec. 1003, énfasis suplido. Por ello *"la Policía tiene tanto el derecho como la obligación de realizar investigaciones razonables de todas las actividades sospechosas aunque la naturaleza de las mismas no constituya fundamento suficiente para justificar un arresto...".* *Pueblo v. De Jesús Robles,* 92 D.P.R. 345, 360 (1965). No suscribimos la tesis del recurrido a los efectos de que el ámbito investigativo de un policía uniformado es mucho más estrecho que el de un agente encubierto. Por el contrario, resolvemos que es aplicable a su actuación lo que ha expresado el Tribunal Supremo sobre la figura del agente encubierto:

*"El agente encubierto es un arma de investigación que es necesario utilizar en ciertos delitos, que por su característica esencial de clandestinidad, permanecerían impunes si no se contara con este método. Todo cuanto se requiere es que la actuación del agente no incite o induzca la intención criminal en la mente del acusado, aunque facilite la comisión del delito". Pueblo v. Carballosa Vázquez,* D.P.R. (1992), **92 J.T.S 84**, página 9634, citando a *Pueblo v. Seda,* 82 D.P.R. 719 (1961). Enfasis nuestro.

No podemos requerirle a los agentes del orden público que se hagan de la vista larga al surgir situaciones que, dentro de la "atmósfera total" del caso, sean suficientes para alertarlos a la comisión de un delito. *Pueblo v. De Jesús Robles, supra,* página 359. según expresa el Juez Asociado, señor Negrón García, en su opinión disidente en el caso de *Pueblo v. Conde Pratts, supra,* página 341, (1984):

*"En la prevención e investigación del crimen la Policía no es una esfinge egipcia obligada a adoptar una actitud reservada o enigmática."*

Tampoco debemos ser tan ingenuos como para requerir de quienes investigan conducta delictiva completa candidez en todo momento. Como señala el Tribunal Supremo de los Estados Unidos, es necesario permitir actuaciones en cierto grado engañosas de agentes del orden público dentro de sus funciones investigativas:

*"The Supreme Court has always sanctioned a certain degree of deception or subterfuge on the part of law enforcement authorities as a necessary incident to the investigation of unlawful activities, which are by their nature, covert and secretive.... the realities involved in curbing drug abuse require aggressive methods of enforcement, justifying conduct which in gentler circumstances might indeed be distasteful.... The Fourth Amendment does not protect a wrongdoer's misplaced trust,... nor does it require the police to offer their true identity whenever they answer the telephone."* U.S. v. Pasarella, 788 F.2d 377, 380 (6th Cir.1986), citas omitidas.

Por los fundamentos expuestos, se revoca la resolución recurrida que declaró con lugar la moción de supresión de evidencia.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

## ESCOLIOS 96 DTA 88

**1.** El recurso, acompañado de una moción en auxilio de jurisdicción, fue presentado en la Secretaría del Tribunal de Circuito de Apelaciones el 15 de marzo de 1995.

**2.** El Tribunal Supremo de Puerto Rico ha indicado que al resolver una moción de supresión de evidencia, el tribunal debe exponer los fundamentos de la decisión, puesto que ello facilita su revisión en el foro apelativo. *Pueblo v. Ortiz Zayas,* 122 D.P.R. 567 (1988). No se hizo así en el caso de autos.

**3.** La orden fue notificada el 19 de junio de 1995, por lo que el plazo concedido expiró el 19 de julio de 1995.

**4.** El Diccionario de la Lengua Española define *"Buscapersonas"* como *"mensáfono".* Esta voz, a su vez, se define como sigue:

*"Mensáfono - Aparato portátil que sirve para recibir mensajes a distancia."* Real Academia Española, *Diccionario de la Lengua Española,* Vigésima Primera Ed., Madrid, 1992, páginas 960 y 237 respectivamente.

**5.** Véase la declaración jurada por el policía Rivera Esquilín en la misma fecha de los hechos, 14 de septiembre de 1994, Recurso de *Certiorari,* Apéndice (b), pág. 12.

**6.** Esa sección establece:

*"No se violará el derecho del pueblo a la protección de sus personas, cosas, papeles, efectos, contra registros, incautaciones y allanamientos irrazonables.*

*No se interceptará la comunicación telefónica.*

*Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.*

*Evidencia obtenida en violación de esta sección será inadmisible en los tribunales."*

**7.** Página 5 de la moción enmendada de supresión de evidencia, Petición de *Certiorari*, apéndice (d).

**8.** Transcripción oficial de la vista de supresión de evidencia, página 10.

**9.** *Id.,* página 11.

**10.** *Id.*

**11.** *Id.*, página 17.

**12.** *Id.,* página 18.

**13.** *Id.,* página 5.

**14.** *Id.*

**15.** *Id.,* página 9.

**16.** Cabe mencionar que nuestro Tribunal Supremo ha determinado que cuando se examinan las decisiones del Tribunal Supremo Federal relativas a la Enmienda Cuarta se debe tener en cuenta que las mismas sólo indican el contenido mínimo de dicha garantía. *Pueblo v. Rivera Colón.* D.P.R. (1991), **91 J.T.S. 61**, página 8729; *E.L.A. v. Coca Cola Bott. Co., supra,* página 205.

**17.** Resumil de San Filippo, Olga, *Práctica Jurídica de Puerto Rico, Derecho Procesal Penal.* Tomo I, Equity Publishing Company, 1990, página 205:

*"El área de protección se determinará, por tanto, a la luz de las circunstancias específicas y con base en que la disposición constitucional protege a las personas y su interés sobre sus casas, papeles, efectos o lugares y no a éstos como tales. así lo que una persona expone al público en mayor o menor grado determinará su interés constitucional sobre el objeto y, por tanto, el alcance de la protección."*

**18.** Comúnmente se le llama *"pager"* en inglés a un aparato electrónico que recibe mensajes a distancia, es decir a lo que en Puerto Rico denominamos por el anglicismo onomatopéyico *"beeper",* correctamente denominado *"mensáfono".*

**19.** *Pueblo v. Rivera Rivera,* 117 D.P.R. 283 (1986); *Ratz v. United States,* 389 U.S. 347, 357 (1967).

**20.** Otras excepciones son la evidencia a plena vista, la evidencia arrojada o abandonada, la evidencia obtenida en el transcurso de una persecución, la evidencia obtenida en un registro administrativo en una actividad altamente reglamentada por el Estado y la evidencia obtenida cuando ha mediado consentimiento para el registro. *Pueblo en Interés del Menor N.R.O. supra,* página 146.